H. & P. Manufacturing Co., Inc. *v*. Hanson.

5-175                                       261 S. W. 2d 800

Opinion delivered November 2, 1953.

*Josh W. McHughes,* for appellant.

*Merle Shouse,* for appellee.

SAM ROBINSON, J. Appellant, H. & P. Manufacturing Company, hereinafter referred to as H. & P., is in the sawmill business and filed this suit to enjoin and restrain T. N. Hanson, a former employee, from disposing of any of the company's property or going onto the premises of the company at Marshall, Arkansas; and asked judgment against Hanson for damages alleged to have occurred by reason of his action in dismantling a portion of the company's mill. A temporary restraining order was issued without notice. Hanson filed a cross-complaint alleging the company was indebted to him for wages earned and that in addition he was entitled to recover the penalty provided by Ark. Stat., § 81-308 because of the company's failure to pay his wages within seven days after his discharge. He further alleges he is entitled to $1,000 of H. & P. stock under the terms of a previous contract of employment. He also seeks damages for tools he left on the company's premises which he claims were lost by reason of the injunction preventing him from going on the property and recovering them. There was a judgment for Hanson on the cross-complaint for wages in the sum of $390, penalty in the sum of $715.85, $300 for loss of tools, and stock having a face value of $1,000. H. & P. appeals, but makes no contention here that Hanson is not entitled to the $1,000 in stock.

In May, 1950, the appellant company and appellee Hanson entered into a contract of employment covering a period of five years; but on or about May 1, 1951, by mutual agreement of the parties this contract was terminated. Hanson continued to work for the company at the weekly salary of $84.23. In May or June of 1951 H. & P., due to financial difficulties, closed its plant and laid off all employees with the exception of Hanson, who was retained on the payroll because at that time the company owed him accumulated wages which it was unable to pay. There was no actual work for him to do and as he expressed it, he just "piddled around".

Finally in July, 1951, H. & P. realized it could no longer carry Hanson on the payroll while trying to raise the money to pay his back salary; therefore he was given

notice that he would not be credited with a salary after August 4. Hanson then made a trip to Little Rock where after a conference with the State Labor Commissioner he called on the president of H. & P. and made a demand for his past-due salary, which at that time amounted to $1,086.48 less a credit due the company in the sum of $98.88 for property sold by Hanson during February and March. There was apparently no ill feeling between the parties; H. & P. was simply unable to pay Hanson's salary and he realized it. It appears that by way of an amicable settlement it was agreed between the parties that Hanson would return to Marshall and sell enough of H. & P.'s property to pay his past-due salary in full.

There is a dispute as to just what property Hanson was authorized to sell. The president of H. & P. says he was authorized to sell what was known as the Hogue tract of timber, and rough lumber and logs on the mill yard; Hanson says he was authorized to sell any and all company property. In any event, in August and September Hanson sold some of the personal property amounting to $597.60, leaving a balance of salary owed to him of $390. Hanson dismantled the mill to some extent, but it appears the parts were stored on the mill property where they were protected from the weather; and we do not think H. & P. has been damaged due to the fact that a portion of the mill was disassembled.

Later Hanson ran an ad in a local paper to the effect that practically all of the company's personal property would be sold at a certain time and place to the highest bidder. When the president of H. & P. learned of the ad, he caused this action to be filed and got a temporary restraining order enjoining Hanson from disposing of any of the property and from going onto the mill property.

Hanson says he lost valuable tools which were on the company property at the time the injunction was issued. He was given notice his connection with the company would be severed August 4 and when he left his tools there after that date he did so at his own risk; the temporary injunction was not issued until October 9. It is not shown that the company had any reason to believe

Hanson had left tools on the premises when his pay was stopped; and it is not shown the tools were lost due to any negligence of the appellant company.

Next, Hanson is not entitled to recover a penalty by reason of the company's failure to pay his salary in full August 4 when he was removed from the payroll. It is true he demanded his salary two days later, but he then entered into an agreement to help dispose of certain property in order to raise the money to pay his salary. Moreover Hanson conferred with the president of H. & P. with reference to his salary on August 6, only two days after his salary stopped, and it does not appear that he called for his check at the expiration of seven days or notified H. & P. where to send it. Seemingly he was satisfied with the arrangement whereby he was authorized to sell company property to raise funds with which to pay his salary. If he had called for his money after the seven-day period, or had notified the company where to send it, perhaps the company would have suspected he was going to seek a penalty and by a supreme effort might have been able to raise the money to pay his salary. The statute is a penal one and is imposed only in favor of those who come strictly within its letter. *Missouri Pacific Railroad Co.* v. *Clement,* 207 Ark. 389, 181 S. W. 2d 240. Where a discharged employee neither calls for his pay after expiration of seven days nor notified the employer where to send his paycheck, he is not entitled to recover the penalty. *Wisconsin & Arkansas Lumber Co.* v. *Reaves,* 82 Ark. 377, 102 S. W. 206; *St. Louis, I. M. & S. R. Co.* v. *Bailey,* 87 Ark. 132, 112 S. W. 180. In *Lusk* v. *Jones,* 128 Ark. 312, 194 S. W. 250, it is said: "In order for an employee of a railroad company [the Act now applies to all corporations] to avail himself of the penalty provided in this statute, he is required to request his foreman or timekeeper to send his money or check therefor to some station where a regular agent is kept; else, after the expiration of seven days from the date of his discharge, he is required to demand his money from someone authorized to pay the wages due him."

Furthermore the only reason Hanson was kept on the payroll for 60 days or more after the mill closed down was because of the fact that the company was unable to pay him his accumulated salary. Hanson testified: "Q. Now when the mill discontinued operating some time after May 19, 1951, you knew that there was no further employment there for you, didn't you? A. I didn't see any. . . . Q. All right. After we ceased operating, didn't you remain up there at Marshall when there was nothing to do except piddle around awaiting the outcome of my efforts to raise money to pay your back wages? A. That is right." [It will be recalled that Hanson was on the payroll during this period.] "Q. Yes, in other words, then you were actually on the payroll and sending in your payroll weekly at $84.23 a week and not producing a thing that the company could sell or gain any benefit from. A. That is right." Therefore Hanson was actually allowed a salary for 60 days after the job closed down.

Our conclusion is that Hanson is entitled to a judgment in the sum of $390, also stock of the face value of $1,000; but he is not entitled to judgment for the loss of his tools nor is he entitled to recover a penalty. Appellant, H. & P. Manufacturing Company, is not entitled to recover damages by reason of the partial dismantling of the mill.

The cause is reversed with directions to enter a decree not inconsistent herewith. The costs of appeal are assessed against appellee.