WAL-MART STORES, INC. *v.*
D.A.N. JOINT VENTURE III, L.P.

08–434                                        288 S.W.3d 627

Supreme Court of Arkansas
Opinion delivered October 23, 2008

*Bassett Law Firm, LLP*, by: *Dale W. Brown*, for appellant.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Jeff Fletcher*, for appellee.

E LANA CUNNINGHAM WILLS, Justice. This case involves the registration of a foreign judgment and the issuance of an Arkansas writ of garnishment to enforce it. Also at issue is the extent of the garnishee's liability after default. A Florida court granted appellee D.A.N. Joint Venture III L.P. (D.A.N.) a judgment against an employee of Wal-Mart Stores, Inc. (Wal-Mart) on November 6, 2000. On July 31, 2006, D.A.N. filed the foreign judgment with the Benton County Circuit Court, which issued a writ of garnishment upon Wal-Mart. D.A.N. served Wal-Mart with the writ of garnishment, accompanied by allegations and interrogatories, on September 20, 2006. However, Wal-Mart failed to file an answer.

D.A.N. filed a motion on September 6, 2007, almost a year later, requesting that the circuit court order Wal-Mart to appear and answer the allegations and interrogatories served with the writ of garnishment. Following a hearing, the circuit court held that Arkansas law provides for issuance of a writ of garnishment after registration of a foreign judgment, and entered a judgment against Wal-Mart in the amount of $5,947.81, which was the amount Wal-Mart owed at the time of service of the writ, plus the amount of non-exempt wages earned through September 28, 2007. The circuit court denied Wal-Mart's motion for reconsideration.

On appeal, Wal-Mart brings three points for reversal: (1) the circuit lacked subject-matter jurisdiction to issue the writ of garnishment and, therefore, the subsequent default judgment; (2) the circuit court's order as to the amount of Wal-Mart's liability violated Ark. Code Ann. § 16-110-407 (Repl. 2006); and (3) Wal-Mart was denied constitutional due-process rights under the Fourteenth Amendment.

Our review of this appeal requires interpretation of Arkansas statutes; accordingly, the standard of review is *de novo*, because it is for this court to determine what a statute means. *Vimy Ridge Mun. Water Imp. Dist. No. 139 of Little Rock v. Ryles*, 373 Ark. 580, 285 S.W.3d 193 (2008). The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Nolan v. Little*, 359 Ark. 161, 196 S.W.3d 1 (2004). Reviewing issues of statutory interpretation, this court first construes a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and

unambiguous, conveying a clear and definite meaning, the court does not resort to the rules of statutory construction. *Id.* If there is an ambiguity, the court looks to the legislative history of the statute and other factors, such as the language used and the subject matter involved. *State v. L.P.*, 369 Ark. 21, 250 S.W.3d 248 (2007). The court strives to reconcile statutory provisions relating to the same subject to make them sensible, consistent, and harmonious. *Id.*

As a threshold matter, the court must first address Wal-Mart's argument that the circuit court did not have jurisdiction to issue a writ of garnishment after registration of a foreign judgment. D.A.N. registered the Florida court's judgment under the Uniform Enforcement of Foreign Judgments Act (UEFJA), codified at Ark. Code Ann. § 16-66-601 to -608 (Repl. 2005). UEFJA provides a summary procedure that allows a party obtaining a judgment to enforce the judgment in any jurisdiction where the judgment debtor is found. *Nationwide Ins. Enter. v. Ibanez*, 368 Ark. 432, 246 S.W.3d 883 (2007). The Act's purpose is to allow a party with a favorable judgment to obtain prompt relief. *Id.* This statute is in keeping with the "full faith and credit clause" of the United States Constitution. *See* U.S. Const. Art. 4, § 1; Ark. Code Ann. § 16-66-601. Under § 16-66-602, any valid foreign judgment may be filed in "any court of this state having jurisdiction of such an action," and the foreign judgment "so filed has the same effect . . . as a judgment of a court of this state and may be enforced or satisfied in like manner." When the valid foreign judgment is registered, "it becomes, in effect, an Arkansas judgment and will remain on the judgment books to be enforced by Arkansas in the future." *Ibanez*, 368 Ark. at 436, 246 S.W.3d at 886 (citing *Nehring v. Taylor*, 266 Ark. 253, 583 S.W.2d 56 (1979) (decision under prior law).

Wal-Mart, citing *Moory v. Quadras, Inc.*, 333 Ark. 624, 970 S.W.2d 275 (1998), argues that the Benton County Circuit Court was without jurisdiction to issue a writ of garnishment upon a judgment entered by a Florida court. In *Moory,* this court, quoting *McGehee Bank v. Charles W. Greeson & Sons, Inc.*, 223 Ark. 18, 263 S.W.2d 901 (1954), noted that, with respect to garnishment, " 'the writ can issue only out of the Court which rendered the judgment unless Statutes empower some other authority to issue the garnishment.' " *Moory*, 333 Ark. at 626, 970 S.W.2d at 276. Wal-Mart essentially argues that, under these authorities, a circuit

court in one Arkansas county could not issue a writ of garnishment to enforce a judgment granted in another Arkansas county, therefore, the Benton County Circuit Court should not have authority to issue a writ of garnishment to enforce a Florida judgment, because to do so would grant the Florida judgment "more faith and better credit" than an Arkansas judgment.

In both *Moory* and *McGehee*, however, this court found that no Arkansas statute provided authority for a court that did not render the underlying judgment to issue a writ of garnishment. Such is not the case in the present appeal. Here, D.A.N. registered the Florida judgment in the Benton County Circuit Court under § 16-66-602, which plainly provides that a "judgment so filed has the same effect and is subject to the same procedures . . . as a judgment of a court of this state and may be enforced or satisfied in like manner." A properly registered foreign judgment may therefore be enforced in the same manner as an Arkansas judgment. Wal-Mart's argument, if accepted, would deny garnishment as an enforcement mechanism for foreign judgments registered in Arkansas. This yields an absurd result and gives § 16-66-602 no meaning or effect. D.A.N. properly registered a valid foreign judgment in Benton County Circuit Court as provided by § 16-66-602, and that court had jurisdiction to issue a writ of garnishment upon Wal-Mart. Accordingly, we find no merit in Wal-Mart's jurisdictional argument.

Wal-Mart also argues that it should not have been liable under Arkansas garnishment statutes for anything other than the amount it held in non-exempt wages at the time of service of the writ — $188.87. The circuit court awarded that amount, *plus* the amount that would have been withheld between the time Wal-Mart defaulted and the time the garnishor returned to court to ask Wal-Mart to appear and answer the writ — $5947.81. In support of its argument, Wal-Mart relies on Ark. Code Ann. § 16-110-407 (Repl. 2006). This statute provides that a garnishee who fails to answer a writ of garnishment within the twenty-day time period may be subject to "judgment . . . in such amount . . . as the court finds the garnishee held at the time of the service of the writ . . . together with attorney's fees and . . . expenses." *Id.* Another statute, Ark. Code Ann. § 16-110-401(a), provides notice to an employer garnishee that it may be liable for "the amount of non-exempt wages owed the debtor-employee on the date [the

employer was] served" if it does not file an answer to the writ of garnishment.

D.A.N. relies upon another statute in the applicable sub-chapter, Ark. Code Ann. § 16-110-415, which provides that "[u]pon the garnishment of . . . wages," the employer shall hold, "to the extent due upon the judgment . . . any nonexempt wages due or which subsequently become due." This statute provides for a lien on wages due at the time of service, which continues as to subsequent earnings until the total amount due on the judgment is satisfied. *See* Ark. Code Ann. § 16-110-415(b); *see also Thompson v. Bank of America*, 356 Ark. 576, 157 S.W.3d 174 (2004).

Although Ark. Code Ann. §§ 16-110-401 and 407 appear unambiguous, when these statutes are viewed in conjunction with Ark. Code Ann. § 16-110-415, a question of statutory construction is presented as to whether a garnishee's liability is limited to the amount of non-exempt wages it held at time of the service of the writ under §§ 16-110-401 and 16-110-407, or whether the defaulting garnishee's liability extends to subsequent earnings encompassed by the "lien" provisions of § 16-110-415.

■ As noted above, the primary guidepost in statutory construction is to determine the General Assembly's legislative intent. *Nolan, supra.* In this regard, the legislative history of § 16-110-407 is instructive. Prior to 1989, a defaulting garnishee was subject to liability for the entire amount of the Plaintiff's underlying judgment. *See, e.g., Metal Processing, Inc. v. Plastic & Reconstructive Assocs., Ltd.*, 287 Ark. 100, 697 S.W.2d 87 (1985); *see also* former statute, Ark. Stat. Ann. § 31-512 (Repl. 1962). In 1989, however, the General Assembly passed Act 463, amending § 16-110-407 to limit judgments against defaulting employer garnishees to the amount held by the garnishee at the time of service of the writ. Act 463 of 1989 contained language stating that "[n]*otwithstanding Ark. Code Ann. 16-110-407 or any other law to the contrary*, if an employer garnishee fails to answer a writ of garnishment within twenty (20) days after the employer is served with the writ, the employer garnishee shall *only* be liable for the amount of non-exempt wages owed the employee on the date the employer was served with the writ regardless whether the garnishment is for one pay period or is a continuing garnishment." (emphasis added). The statute was amended again by Act 1027 of 1991 to address the notice required to be given garnishees, and some of the language

above from Act 463 of 1989 was removed.[1] The substantive restriction, however, limiting the defaulting garnishee's liability to the amount of non-exempt wages held at the time of the service of the writ was retained. This restriction is not affected by the lien provided for in § 16-110-415. That statute, in its original form, pre-existed the change in the law brought about by Act 463 of 1989. *See* Act 1981, No. 794.[2] In addition, § 16-110-415 applies, not to the liability of a defaulting garnishee, but "[u]pon garnishment of . . . wages" generally. We have repeatedly stated that the specific statute controls over the general. *See, e.g., Ozark Gas Pipeline Corp. v. Arkansas Pub. Serv. Comm'n*, 342 Ark. 591, 29 S.W.3d 730 (2000). Applying this principle to the question presented by this appeal, we hold that § 16-110-407 specifically limits a defaulting garnishee's liability to the amount of non-exempt wages "held at the time of service of the writ of garnishment," plus attorney's fees and other expenses "appropriate under the facts and circumstances."

This result is not inconsistent with our decision in *Ibanez, supra,* which is clearly distinguishable. Unlike this case, which involves a writ of garnishment issued by an Arkansas court after registration of a foreign judgment, *Ibanez* involved a Washington state garnishment, which Wal-Mart defaulted on in Washington. The Washington court's default judgment against Wal-Mart — for the full amount of the plaintiff's underlying judgment — was then registered in Arkansas under UEFSA. Washington law provided a two-step garnishment procedure, which involved an initial judg-

---

[1] The original purpose of Act 1027 of 1991 was to clarify the law "on judgments against garnishees" by amending § 16-110-407. *See* House Bill 2009 of 1991 (Title). After the bill was introduced, this court construed Ark. Code Ann. §§ 16-110-401 to -415 (1987) in *Bob Hankins Distributing Co. v. May,* 305 Ark. 56, 805 S.W.2d 625 (1991) ("*Hankins II*") and held that Arkansas garnishment statutes were unconstitutional because they failed to provide adequate notice to a garnishee that his property was subject to satisfaction of the original judgment. Following *Hankins II,* House Bill 2009 was amended to specify the mandatory notice provisions of § 16-110-401.

[2] As originally adopted by Act 794 of 1981, this statute allowed either a one pay period garnishment or a three-month continuing garnishment with the employee's consent. This is the version of the lien statute that was in effect when Act 463 of 1989 limited a defaulting garnishee's liability "regardless whether the garnishment is for one pay period or is a continuing garnishment." The lien statute was subsequently amended to remove the one garnishment per pay period language (*See* Acts 1991, No. 192) and to provide that the lien continues until the total amount of the judgment and costs are satisfied. Acts 1995, No. 276.

ment against the defaulting garnishee for the full amount of the underlying judgment, which thereafter could be reduced to the amount the garnishee held at the time of the service of the writ, plus the cumulative amount subject to Washington's lien statute. *Id.* at 434, 246 S.W.3d at 885, n.1. The Washington court ordered Wal-Mart to pay the full amount of the judgment, the first step under Washington's garnishment procedure, but after that first step, Nationwide registered the judgment for the full amount in the Benton County Circuit Court. *Id.* at 437, 246 S.W.3d at 887.

The *Ibanez* court noted that both parties there conceded that the proper amount of the the judgment against Wal-Mart was the amount due at the time the writ was served through the period before the employee was terminated. The Arkansas circuit court reduced the Washington judgment to that amount. Although this court in *Ibanez* did not specifically state whether it was applying Arkansas or Washington law to affirm the circuit court's reduction of the judgment to the smaller amount, it held that to allow the initial larger amount entered in Washington would "encourage a circumvention of the law in both states," noting that "[t]his court adheres to the public policy that a judgment debtor may not collect more than the garnishee held at the time the writ was filed." *Id.* at 439, 246 S.W.3d at 888. Here, that amount was $188.87. Accordingly, we reverse the circuit court on this point and remand the case for an entry of judgment consistent with this opinion.

Because we hold that the plain language of § 16-110-407 limits the liability of a garnishee upon default to the amount held at the time of service, Wal-Mart's constitutional argument is moot. Further, we note that the practical result of the limitation in § 16-110-407 is to eliminate any incentive for a garnishee to file an answer or make a timely response to a writ of garnishment; there is no penalty for a garnishee's default. However, this is a public policy decision, and we have repeatedly stated that public policy is for the General Assembly to decide, not the courts. *Medical Liab. Mut. Ins. Co. v. Alan Curtis Enters., Inc.*, 373 Ark. 525, 285 S.W.3d 233 (2008).

Affirmed in part; reversed in part.

CORBIN, J., not participating.