2009 Ark. 332

McCOURT MANUFACTURING CORP., Appellant,

v.

Dave RYCROFT, Appellee.

No. 08–653.

Supreme Court of Arkansas.

June 4, 2009.

Thompson and Llewellyn, P.A., by: William P. Thompson and James M. Llewellyn, Jr., Fort Smith, for appellant.

Pryor, Robertson, Beasley & Smith, PLLC, by: C. Brian Meadors, Fort Smith, for appellee.

JIM HANNAH, Chief Justice.

McCourt Manufacturing Corporation (the Corporation) appeals a judgment entered on a jury verdict in favor of Dave Rycroft, a former employee. The judgment awarded Rycroft $12,498.15 in unpaid commissions and a statutory penalty. The Corporation asserts that the jury verdict is not supported by substantial evidence and that the circuit court erred in submitting to the jury the question of whether appellee Dave Rycroft satisfied the penalty requirements of Arkansas Code Annotated section 11–4–405 (Repl. 2002). The Corporation further alleges that the circuit court erred in finding that the accrual of penalty in this case extended beyond the sixty-day period set out in Arkansas Code Annotated section 11–4–405(a)(2). Additionally, the Corporation asserts that the circuit court erred in failing to instruct the jury on its waiver and estoppel defenses. We hold that the circuit court erred in submitting to the jury the question of whether Rycroft satisfied the penalty requirements of section 11–4–405. Because we reverse the circuit court on this first issue, we need not address the second issue regarding the sixty-day period. We affirm the circuit court's refusal to instruct the jury on the Corporation's affirmative defenses of estoppel and waiver and the award of $12,498.15 for commissions due by Rycroft. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(e).

This case was originally appealed to the court of appeals. *See McCourt Mfg. Corp. v. Rycroft*, 102 Ark. App. 272, 284 S.W.3d 84 (2008). The court of appeals held that the circuit court erred in denying the Corporation's motion for directed verdict on application of the penalty, rendering the issue of whether the accrual of the penalty could be expended beyond sixty days moot. The court of appeals affirmed the award of $12,498.15 in commissions due Rycroft and the circuit court's refusal to instruct the jury on the Corporation's affirmative defenses of estoppel and waiver. The case comes to this court by way of a petition for review. When this court grants a petition for review of a court of appeals decision, we review the case as though it had originally been filed with this court. *See Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009).

Rycroft was hired in March 2005 to supervise sales at the Corporation. Rycroft alleges that Charles McCourt (McCourt) offered him wages comprised of a salary plus .5% commission[1] on sales, and that

---

1. Neither party raises the issue of whether commissions constitute wages under Arkan-

he accepted that offer. McCourt denies having agreed to any commission. Commissions at the Corporation were paid quarterly, and the first quarter ended a few days after Rycroft was hired. He received no commission check at that time and said nothing because he had only worked a few days. However, at the end of the next quarter in June, Rycroft again received no commission check. He spoke to his immediate supervisor, Mark Price, who told him to speak with McCourt because McCourt had hired Rycroft. Rycroft alleges that McCourt denied that an agreement had been made to pay a commission. Rycroft received no commission in June and was given no promise that a commission would be paid. Rycroft testified that he understood something might be done about the commissions in the future. He remained with the Corporation until January 16, 2006. On January 23, 2006, Rycroft's attorney had a letter hand delivered to the Corporation by messenger demanding payment of the commission. The messenger was unable to identify the "guy" she hand delivered the letter to; however, she was able to testify that she did not deliver it to Mark Price, Rycroft's immediate supervisor, or Charles McCourt. There was no proof the letter was delivered to Judy Joyce, who was responsible for the Corporation's payroll. Suit was filed in February 2006. The circuit court entered final judgment awarding Rycroft a judgment in the principal amount of $12,498.15, plus prejudgment and postjudgment interest. Rycroft was further awarded a penalty of $164.38 per day under Arkansas Code Annotated section 11–4–405 beginning January 17, 2006, and continuing until the $12,498.15 is paid.

sas Code Annotated section 11–4–405; therefore, we will treat commissions as wages for

### Procedural Bar

As an initial issue, we address Rycroft's assertion that the Corporation is procedurally barred from challenging the jury verdict because, while it moved for a directed verdict at the close of all the evidence, it did not move for a directed verdict at the close of the plaintiff's case. Rycroft cites us to *Stroud Crop, Inc. v. Hagler,* 317 Ark. 139, 875 S.W.2d 851 (1994), and *Clowney v. Gill,* 326 Ark. 253, 929 S.W.2d 720 (1996). Beginning in *Stroud,* this court required a directed-verdict motion at the close of the plaintiff's case, in addition to a directed-verdict motion at the close of all the evidence, and relied upon Arkansas Rule of Civil Procedure 50 for that requirement:

> In order to preserve their sufficiency of the evidence argument for this court's consideration, a motion for a directed verdict must have been made at the close of the plaintiff's case-in-chief, and again at the conclusion of all the evidence. ARCP Rule 50(a) and (e).

*Stroud,* 317 Ark. at 142, 875 S.W.2d at 853. *Clowney* and *Houston v. Knoedl,* 329 Ark. 91, 95, 947 S.W.2d 745, 747 (1997), relied upon *Stroud* and stated that a motion for a directed verdict must be made not only at the close of all the evidence, but also at the close of the plaintiff's case. Rule 50(a) provides: "A party may move for a directed verdict at the close of the evidence offered by an opponent.... A party may also move for a directed verdict at the close of all the evidence." Rule 50(e) provides, in pertinent part, that where a party challenges the sufficiency of the evidence, a party must move for a directed verdict at the close of all the evidence or the issue is waived on appeal. *Stroud, Clowney,* and *Houston* are inconsistent with Rule 50.

purposes of this appeal.

As noted, the Corporation moved for a directed verdict at the close of all the evidence. The Corporation thus complied with Rule 50. To the extent that *Stroud, Clowney,* and *Houston* make a directed-verdict motion mandatory at the close of the plaintiff's case to preserve a sufficiency-of-the-evidence argument, they are overruled.[2]

*Section 11-4-405*

▮▮▮ At issue is whether Rycroft satisfied the requirements of section 11-4-405. We are thus called upon to interpret a statute:

> Reviewing issues of statutory interpretation, this court first construes a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Wal-Mart Stores, Inc. v. D.A.N. Joint Venture III, L.P.,* 374 Ark. 489, 288 S.W.3d 627 (2008). When the language of a statute is plain and unambiguous, conveying a clear and definite meaning, the court does not resort to the rules of statutory construction. *Id.* If there is an ambiguity, the court looks to the legislative history of the statute and other factors, such as the language used and the subject matter involved. *Id.* The court strives to reconcile statutory provisions relating to the same subject to make them sensible, consistent, and harmonious. *Id.*

*City of Jacksonville v. City of Sherwood,* 375 Ark. 107, 113, 289 S.W.3d 90, 94-95 (2008).

▮▮▮ Section 11-4-405 originated in Act 61 of 1889 and was last amended in Act 210 of ∣₆1905. Under the original act, the section applied only to railway companies. "The statute was passed to prevent railroads thus delaying the payment of their debts to their employees, especially the helpless class dependent upon their labor for their daily sustenance." *St. Louis Sw. Ry. Co. v. Brown,* 75 Ark. 137, 138, 86 S.W. 994, 995 (1905). Act 210 of 1905 extended the statute to cover "all companies and corporations doing business in this State." In *Wisconsin & Arkansas Lumber Co. v. Reaves,* 82 Ark. 377, 379, 102 S.W. 206, 207 (1907), handed down after the passage of Act 210, this court stated as follows:

> [T]o protect the employees of corporations, many of whom are day laborers and dependent on their daily wages for support and maintenance, and who are not in a position to enter into expensive litigation, the law seeks to compel payment without suit by making it in the interest of the corporation to promptly pay the unpaid wages of the discharged employee.

Section 11-4-405 provides in pertinent part as follows:

> (a)(1) Whenever any railroad company or corporation or any receiver operating any railroad engaged in the business of operating or constructing any railroad or railroad bridge shall discharge, with or without cause, or refuse to further employ any servant or employee thereof, the unpaid wages of the servant or employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of the discharge or refusal to longer employ.
>
> (2) Any servant or employee may request of his foreman or the keeper of his or her time to have the money due him or her, or a valid check therefor, sent to any station where a regular agent is kept. If the money or a valid check therefor does not reach the station with-

---

2. We note that *Stroud, Clowney,* and *Houston* were decided on grounds other than the defendant's failure to make a directed-verdict motion at the close of the plaintiff's case. Thus, the statements were merely *dicta.*

in seven (7) days from the date it is so requested, then, as a penalty for the nonpayment, the wages of the servant or employee shall continue from the date of the discharge or refusal to further employ at the same rate until paid. However, the wages shall not continue more than sixty (60) days unless an action therefor shall be commenced within that time.

(b) This section shall apply to all companies and corporations doing business in this state and to all servants and employees thereof. Any servants or employees who shall hereafter be discharged or refused further employment may request or demand the payment of any wages due and, if not paid within seven (7) days from discharge or refusal to longer employ, then the penalties provided in subdivision (a)(2) of this section for railway employees shall attach.

 This court has declared this statute to be "penal in the extreme." *Rousseau v. Ed White Junior Shoe Co.*, 222 Ark. 240, 243, 258 S.W.2d 240, 241 (1953); *see also St. Louis, Iron Mountain & S. Ry. Co. v. McClerkin*, 88 Ark. 277, 281, 114 S.W. 240, 241 (1908) (stating that the statute being "highly penal" means strict compliance is required). Further, because "the penalty is so obviously disproportionate to the actual injury it has always been the policy of the law to hold the plaintiff to a strict compliance with the statutory conditions." *Id.*, 258 S.W.2d at 243. "The statute is a penal one and is imposed only in favor of those who come strictly within its letter." *H. & P. Mfg. Co. v. Hanson*, 222 Ark. 566, 569, 261 S.W.2d 800, 802 (1953). A recovery of the penalty is denied the employee unless "he has made a distinct demand for the payment of his wages in accordance with the terms of the statute." *St. Louis–San Fransisco Ry. Co. v. De Voe*, 152 Ark. 38, 39, 237 S.W. 433, 433 (1922). "[N]o penalty accrues unless he requests his foreman or the keeper of this time to have the money due him, or a valid check therefor, sent to a specified station where a regular agent is kept, and the money or check does not reach such station within seven days from the date it is requested." *St. Louis, Iron Mountain & S. Ry. Co. v. Bailey*, 87 Ark. 132, 136, 112 S.W. 180, 181 (1908). "[D]emand shall be made either to the superior who has immediate supervision over the discharged employee or the one who keeps his time." *Bush v. Coleman*, 131 Ark. 379, 381, 199 S.W. 87, 88 (1917). A demand made upon a supervisor who is not the foreman is insufficient. *McClerkin*, 88 Ark. at 281, 114 S.W. at 242. "Nothing can be taken by intendment to show compliance with statutes of this kind." *Id.*, 114 S.W. at 242.

 Rycroft bore the burden of proving the elements of his claim for the penalty. *Rousseau*, 222 Ark. at 242, 258 S.W.2d at 241; *Missouri Pac. R.R. Co. v. Warren*, 162 Ark. 199, 204, 258 S.W. 130, 131 (1924). The evidence Rycroft offered showed that he delivered a demand to the Corporation within the statutory seven-day period after his discharge. However, he failed to provide any evidence to show that the demand was received by his foreman (Price), or McCourt, or the keeper of his time (Joyce) within seven days as required by section 11–4–405. Yolanda Bell, the messenger, testified that she took the demand letter into the Corporation's offices [3] and initially found no one there. She called out "Hello, Hello," and a man came out of an office to greet her. Bell told the man what the letter was, who she was, and she testified

---

**3.** At trial, Bell testified that she did not know whether she delivered the letter on January 23, 2006, or on January 24, 2006; however, she was sure she delivered it on a Monday morning. January 23, 2006, was a Monday morning.

that he accepted it. She did not know to whom she delivered the letter, but upon seeing photographs of Price and McCourt, she was sure she had not delivered the letter to either of them. Price testified that he first saw Rycroft's demand letter when it was shown to him by McCourt after McCourt's return from a business trip about February 24 to February 28. McCourt testified that he was out of town at the time the letter was delivered and that while someone in the Corporation did receive it, no one was ever identified as having received it. Rycroft failed to offer any substantial evidence to show that he strictly complied with section 11–4–405 by demanding his earned but unpaid wages from his foreman or keeper of time within seven days. The circuit court erred in refusing to grant a directed-verdict motion on the issue of the application of the penalty provisions of section 11–4–405.

### Affirmative Defenses of Waiver and Estoppel

■ The Corporation alleges that Rycroft is precluded from pursuing the commission because he waived any right to the commission. Waiver and estoppel were asserted as affirmative defenses, and the Corporation asserts the circuit court erred in refusing to instruct the jury on waiver and estoppel. A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Williams v. First Unum Life Ins. Co.*, 358 Ark. 224, 229, 188 S.W.3d 908, 911 (2004).

> Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent of forever depriving him of the benefits of the right, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it.

*City of Fort Smith v. McCutchen*, 372 Ark. 541, 544, 279 S.W.3d 78, 81 (2008). The Corporation argues that once Rycroft asserted the right to a commission, and learned that it would not be paid, he waived any right to the commission by continuing in his at-will employment. Rycroft testified that he never gave up his right to the commission and remained with the Corporation because he had financial obligations to meet and had to work. At the time Rycroft complained in June 2005 of not receiving his commission check, any commission that was owed him was then due. Nothing in the record indicates that Rycroft waived his right to a commission already due. Further, according to Rycroft, McCourt made comments that caused Rycroft to believe the issue of the commissions might yet be addressed. Nothing shows that Rycroft abandoned his claim to commissions. There was no basis in the evidence to support an instruction to the jury on waiver and estoppel.

Rycroft has filed a motion with this court requesting costs in the amount of $600 for work in abstracting material that the Corporation should have abstracted. That motion is granted.

We affirm the award of $12,498.15 for commissions due Rycroft and reverse the judgment awarding penalties under Arkansas Code Annotated section 11–4–405.

Affirmed in part; reversed in part. Motion for costs granted.