2010 Ark. 93

**McCOURT MANUFACTURING CORP., Appellant,**

v.

**Dave RYCROFT, Appellee.**

No. 09–1009.

Supreme Court of Arkansas.

Feb. 25, 2010.

Thompson and Llewellyn, P.A., by: James M. Llewellyn, Jr., for appellant.

Pryor, Robertson, Beasley & Smith, PLLC, by: C. Brian Meadors, for appellee.

ELANA CUNNINGHAM WILLS, Justice.

⎳Appellant McCourt Manufacturing Corp. appeals an order of the Sebastian County Circuit Court directing McCourt to pay postjudgment interest to appellee Dave Rycroft. Because this is a second appeal following an appeal previously decided by this court, *see McCourt Mfg. Corp. v. Rycroft*, 2009 Ark. 332, 322 S.W.3d 491, our jurisdiction is pursuant to Ark. Sup.Ct. R. 1–2(a)(7).

This case originally began as an employment dispute between appellee Dave Rycroft and appellant McCourt Manufacturing Corp. ("McCourt"). McCourt hired Rycroft in March 2005 as a sales supervisor. McCourt fired Rycroft in January 2006, and Rycroft sued the company, alleging that it had never paid him the commissions he claimed were part of his employment agreement. Rycroft also sued for the statutory penalty for nonpayment of wages found in Arkansas Code Annotated section 11–4–405 (Repl.2002). The matter proceeded to a jury trial, and the parties stipulated that, if the jury determined that Rycroft was entitled ⎳ the commissions, the amount of recovery for Rycroft's commission would be $12,498.15. The jury found in Rycroft's favor on both the commission and the statutory-penalty issues, and the circuit court entered an order awarding Rycroft $12,498.15, plus prejudgment and postjudgment interest, as well as the statutory penalty, which amounted to $164.38 per day until the judgment was paid. *McCourt Mfg. Co. v. Rycroft*, 2009 Ark. 332, at 3, 322 S.W.3d at 494.

McCourt appealed the judgment of the circuit court to the court of appeals, posting a supersedeas bond at the same time. The court of appeals affirmed the jury's award of commissions to Rycroft but reversed on the issue of the statutory penalty. *McCourt Mfg. Corp. v. Rycroft*, 102

Ark.App. 272, 284 S.W.3d 84 (2008). After the court of appeals' opinion was handed down, McCourt contacted Rycroft and asked for a calculation of what the appropriate amount of interest would be on the $12,498.15 verdict. Rycroft responded that, by his calculations, the amount owed was $14,619.45 as of May 16, 2008. At the same time, Rycroft advised McCourt that he intended to file a petition for rehearing with the court of appeals and a petition for review with this court.

On May 16, 2008, McCourt sent Rycroft a check in the amount of $14,619.45. The accompanying letter stated that the check was intended as "full and complete satisfaction of the judgment entered August 15, 2007, as amended by the Arkansas Court of Appeals in its order of May 14, 2008." In addition, the "memo" line on the check stated that the payment was "settlement for Dave Rycroft suit." Rycroft returned the check, however, advising McCourt that he could not accept McCourt's characterization of the payment as "full and complete satisfaction of the judgment" because he intended to file petitions for review and for rehearing, and the opinion would not be final until those petitions were resolved.

This court granted McCourt's petition for review, and on review, we affirmed the jury's award of $12,498.15 for unpaid commissions but, like the court of appeals, reversed on the statutory-penalty issue. *McCourt Mfg. Corp. v. Rycroft*, 2009 Ark. 332, 322 S.W.3d 491. The opinion was handed down on June 4, 2009, and that same day, Rycroft wrote to McCourt with his calculations for the amount of interest owed on the judgment. In that letter, Rycroft wrote as follows:

I have calculated the monies owed on the judgment. The principal amount is $12,498.15. Prejudgment interest is $1,180.80. Postjudgment interest through June 4, 2009, is $2,257.20. The Supreme Court also awarded costs and fees in the amount of $600. Thus, the total owed, as of June 5, 2009, is $16,536.15. The interest, for each additional day, is $3.42.

On the phone today, [McCourt's counsel] suggested that the alleged tender on May 16, 2008, somehow "stopped the clock" on the interest.

I disagree. The alleged tender was not a true tender—it came with conditions. As can be seen from our correspondence at that time, the May 16 money was "in full and complete satisfaction of the judgment," and on the check stub, [it] was characterized as "settlement for Dave Rycroft suit." Taking that money under the conditions presented would have resulted in my client waiving his rights to pursue his petition for review before the Arkansas Supreme Court.

To successfully "stop the clock," the money would have to have been deposited in the court registry or, at a minimum, tendered without conditions. *See* Wright & Miller, Federal Practice and Procedure § 2991, n. 6. This was not done.

For these reasons, I think the "interest clock" has continued to run.

On July 2, 2009, McCourt wrote to Rycroft, enclosing a check for $13,667.95, the amount of the judgment plus interest calculated through May 16, 2008, the date of the alleged tender.[1] Rycroft responded on July 6, 2009, noting the parties' disagreement about how long the postjudgment interest had continued to accrue. Rycroft proposed that he deposit the check into the

---

1. The amount also included abstracting and brief costs totaling $831 that this court awarded to Rycroft, less appeal costs of $1,782.50 that this court awarded to McCourt.

registry of the circuit court and file a petition for declaratory relief, asking the circuit court to determine whether the May 16, 2008 check was a "tender" that stopped the accrual of postjudgment interest. McCourt had no objection to the filing of a motion for declaratory relief, and Rycroft filed such a motion on July 13, 2009.

The circuit court issued an order on July 21, 2009, in which it found that, had McCourt wished to stop the accrual of interest, it should have deposited the funds into the registry of the court. Accordingly, the court ordered McCourt to pay Rycroft the amount of the original judgment plus interest of $1,409.04 on or before August 14, 2009. McCourt filed a timely notice of appeal and, in its sole point on appeal, McCourt continues its argument that its "tender" of the check to Rycroft on May 16, 2008, should have stopped the accrual of postjudgment interest. We review this question of law de novo. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239; *Pulaski County v. Ark. Democrat–Gazette, Inc.*, 371 Ark. 217, 264 S.W.3d 465 (2007).

McCourt argues that the circuit court erred in relying on Federal Rule of Civil Procedure 67 and the commentary on that rule provided in Wright & Miller's *Federal Practice and Procedure*. McCourt argues that the federal rule differs from the language used in Arkansas Rule of Civil Procedure 67,[2] and nothing in the Arkansas rule incorporates Wright and Miller's observation that, in some circumstances, depositing a judgment into the registry of the court may "suffice to stop the running of interest."

Instead, McCourt argues, the "substantive law of Arkansas is that when a tender is made, any further sum or interest stops running." In support of this contention, McCourt cites an 1852 case, *Woodruff v. Trapnall*, 12 Ark. 640 (1852). In *Woodruff*, this court held that "a legal tender always stops interest and costs, because where the party who ... is adjudged to pay[ ] offers and tenders that which ... the judgment of the court under the law requires of him, he is no longer in default, and cannot be taxed with either interest or cost, for these only arise in consequence of default." *Woodruff*, 12 Ark. at 643. McCourt argues that *Woodruff* was "substantially similar, if not identical," to the present case and interprets the older case to mean that, once it "tendered" the check to Rycroft in May of 2008, the tender stopped the continuance of the interest.

We find *Woodruff* to be distinguishable. In that case, there had been a prior suit upon a debt by the State against Woodruff, and, upon losing, Woodruff attempted to pay the judgment in notes issued by the Bank of the State of Arkansas. *Woodruff v. Attorney General*, 8 Ark. 236, 236–37 (1847). The matter was appealed to the United States Supreme Court, which decided that notes of the Bank of the State of Arkansas issued previous to January 10, 1845, were a legal tender in payment of debts due to the State.

Upon remand to this court, Woodruff sought a writ of mandamus compelling the

---

**2.** Arkansas Rule of Civil Procedure 67 provides, in pertinent part, as follows:

In any action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money ..., a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum.... Money ... paid into court under this rule shall not be withdrawn except upon the express, written order of the court and shall be delivered only to the person determined by the court to be entitled thereto.

Attorney General to receive the notes in satisfaction of the judgment. Woodruff "offered notes sufficient to pay the judgment and cost, and interest to . . . the day of the original tender." The Attorney General refused to receive the sums unless Woodruff paid interest up to the present time. *Woodruff*, 12 Ark. at 642. Thus, the question, as framed by the court, was whether Woodruff's tender on February 24, 1847, was a valid legal tender. *Id.* The court continued as follows:

> If, as contended for the plaintiff, the money should have been deposited in this court at the time the petition for an alternative mandamus was filed, instead of taking issue upon the fact of tender, the objection should have been then made. By failing to do so, (conceding the deposit to have been proper) the objection was waived as fully as if a plea of *non est factum* should be filed without affidavit and issue taken to it without moving to strike it out, the plea would be good, and so we apprehend would be a plea of tender. But this case is more properly assimilated to a case of tender before suit. There the party makes no deposit; he keeps the money and may use it if he will, but must hold himself in readiness to pay. There is no suit then in existence against him for the money. *Id.* at 644.

In support of the conclusion that the tender in *Woodruff* was more akin to a tender before suit, the court further noted that there was "no issue as to whether money was or was not due; no appeal is made to this court to have the money brought before us and paid over, but to compel a party to receive money upon a proceeding not before us." *Id.* It was in this context that the court stated that, "if the creditor refuses to accept and use the money, why should he complain that the defendant has had the use of it. He is in no worse situation than he would have been if the money had been placed in court." *Id.* Thus, we conclude that not only was the nature of the underlying suit different in *Woodruff*, but the argument pertaining to the need to tender the money into the registry of the court was not timely made, and thus not preserved.

Rycroft does not offer any Arkansas cases that are directly on point, choosing instead to cite federal case law and the commentary on Federal Rule of Civil Procedure 67. His argument is that "stopping the interest clock" requires an *unconditional* tender or, at a minimum, payment of the money into the registry of the court. Rycroft contends that the alleged tender here was conditional and that the funds were not paid into the registry of the court, and thus, the interest should have continued to accrue.

Although we do not find Rule 67 to be controlling on this precise issue, there is Arkansas law that supports Rycroft's argument. For example, in *Fields v. Danehower*, 65 Ark. 392, 46 S.W. 938 (1898), a tract of land was sold by F. Trunkey to Fields for $1381 on credit. To secure the purchase price, Fields executed a deed of trust to Griffis as trustee with power of sale. Fields did not pay the debt, and Griffis sold the property back to Trunkey's widow for $900, who in turn sold the land to Danehower. Fields attempted to redeem the property from Danehower by tendering $1000. The tender, however, was conditioned on Danehower and Trunkey's execution of a release of the land from all liens held by either Danehower or Trunkey. Danehower and Trunkey declined to execute the release because of the condition and brought an action for ejectment. Fields answered and raised as a defense the tender of $1000. The matter proceeded to trial, and the court found in

favor of Danehower and Trunkey. *Fields,* 65 Ark. at 393–93, 46 S.W. at 939.

On appeal, Fields argued that he had tendered an amount sufficient to cover the amount left owing on the property, plus costs and interest, and he was therefore entitled to redeem the land. *Id.* at 399–400, 46 S.W. at 941. This court rejected his contention, noting that the tender had been "made upon the condition that [Danehower] and the Trunkeys should waive their claim to a lien upon the property for any further sum by virtue of the mortgage." *Id.* at 400, 46 S.W. at 941. The court stated that it could appreciate the condition placed upon the tender but nonetheless concluded that the condition was one that Fields "had no right to impose, and it rendered the tender of no effect." *Id.* The court continued as follows:

> It is well established that a tender must be without conditions to which the creditor can have a valid objection. [Citations omitted.] If [Fields] had only asked [Danehower] to sign a receipt showing the amount of money paid, this would have been a condition to which [Danehower] would have had no reason to object, for it would have barred none of his rights. But [Fields] had not paid the mortgage debt in full, and there was no statutory or legal requirement that [Danehower] and the Trunkeys should enter a satisfaction in full on the record, or grant a release, or agree that they would not prosecute their claim for a lien for the balance due. Whether the acceptance of the sum tendered would revest the title of the land in the mortgagor freed from the mortgage lien for the unpaid balance of the purchase money *was a question which [Danehower]*

*and the Trunkeys had the right to litigate, and to demand of [Danehower] that in accepting the money tendered he and the Trunkeys should sign an agreement which would estop and prevent them form litigating that question was a condition which [Fields] had no right to couple with his tender.*

*Id.* at 401, 46 S.W. at 941–42 (emphasis added). *See also Geiser Mfg. Co. v. Davis,* 122 Ark. 193, 182 S.W. 557 (1916) (an offer to repay a note that was conditioned upon the surrender of previous notes did not amount to a tender); *Jacoway v. Hall,* 67 Ark. 340, 55 S.W. 12 (1900) (where tender was offered with a condition that the debtor had no right to impose, the tender was of no avail).

In the instant case, McCourt's "tender" to Rycroft was clearly conditioned upon Rycroft's acceptance of the tender as "full and complete satisfaction" of the August 15, 2007 judgment, as amended by the court of appeals' May 14, 2008 opinion. McCourt had no right to demand that Rycroft accept this as full and complete satisfaction of the judgment, especially where Rycroft had put McCourt on notice that he intended to file a petition for rehearing with the court of appeals and a petition for review with this court, because the appellate decision was not yet a final order.[3] The assertion that Rycroft did not come out any better after his petition for review, as McCourt suggests in its reply brief, is immaterial; he absolutely had the right to continue to litigate the matter. Because McCourt imposed a condition that it had "no right to couple with [its] tender," *see Fields,* 65 Ark. at 401, 46 S.W. at 942, its tender was invalid and

---

3. Under Arkansas Supreme Court Rule 5-3(a), "[a] decision is not final until the time for filing of petition for rehearing or, in the case of a decision of the Court of Appeals, the time for filing a petition for review has expired or, in the event of the filing of such petition, until there has been a final disposition thereof."

thus did not serve to stop the accrual of interest on the underlying judgment.

In addition, even assuming that McCourt's check could have been considered a proper tender, it nonetheless should have been "kept good" if McCourt wished to stop the accrual of postjudgment interest. One way to have kept the tender good would have been to deposit the funds into the court's registry. It has been called "hornbook law" that a tender, once made, must be kept good or alive by, for example, placing into the registry of the court. *Equifax, Inc. v. Luster,* 463 F.Supp. 352, 356 (E.D.Ark.1978) (stating that one way of keeping the tender good is to pay the money into court), *aff'd sub nom. Ark. La. Gas Co. v. Luster,* 604 F.2d 31 (8th Cir.1979). *See also Harris v. McCann,* 229 Ark. 972, 319 S.W.2d 832 (1959) (tender was not sufficient to stop the running of interest on the debt where the debtor was not willing to deposit the money in court); *Abbott v. Herron,* 90 Ark. 206, 209–10, 118 S.W. 708, 709 (1909) (after a tender is duly made "it must, to preserve its legal effect, be kept good" by paying it into the registry of the court); *Cole v. Moore,* 34 Ark. 582 (1879) (where a tender was made before suit, the interest thereon would have stopped if kept good, but where, after filing suit, debtor neither made an unconditional offer to pay nor brought the money to court, interest continued to accrue); *Hamlett v. Tallman,* 30 Ark. 505 (1875) (a party intending to rely upon a tender must keep it good by paying the money into court).

In the present case, McCourt neither made an unconditional tender nor offered to deposit the funds into the registry of the court. Accordingly, the circuit court was correct when it found that McCourt's purported tender did not stop the accrual of postjudgment interest.

■ We note that McCourt raises an additional argument that its posting of a supersedeas bond pending the appeal was sufficient to "protect Rycroft from any loss during the appeal." It further urges—for the first time—in its reply brief that the "only difference between a judgment secured by a supersedeas and a deposit in court is that McCourt paid for the bond and thus was not deprived of the use of the money for the tender. McCourt was deprived of the cost of the bond which cannot be recovered." We do not reach this argument because McCourt did not raise it below. It is axiomatic that a party cannot raise a new argument for the first time on appeal or when there has been no ruling by the trial court, *McWhorter v. McWhorter,* 2009 Ark. 458, 344 S.W.3d 64, let alone raise a new argument for the first time in a reply brief. *Taylor v. State,* 354 Ark. 450, 125 S.W.3d 174 (2003) (we will not consider arguments made for the first time in appellant's reply brief); *City of Dover v. A.G. Barton,* 342 Ark. 521, 29 S.W.3d 698 (2000).

Affirmed.