BAKER REFRIGERATION SYSTEMS, INC and Wayne Baker *v.*
Richard A. WEISS, In His Official Capacity As Director of the
Arkansas Department of Finance and Administration

04-598 201 S.W.3d 892

Supreme Court of Arkansas
Opinion delivered January 27, 2005

*Jack, Lyon & Jones, P.A.*, by: *Eugene G. Sayre*, for appellants.

*David B. Alexander*, for appellee.

DONALD L. CORBIN, Justice. Appellants Baker Refrigeration Systems, Inc., and Wayne Baker (collectively referred to as "Baker") appeal the order of the Pope County Circuit Court dismissing their complaint against Richard A. Weiss, Director of the Arkansas Department of Finance and Administration ("DF&A"), on the ground that the suit was untimely filed. This appeal and its companion case, *Mac v. Weiss*, Docket No. 04-461, raise an issue of first impression regarding the interpretation of Act 1139 of 1997. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We find no error and affirm.

The record reflects that during the spring and summer of 1994, DF&A conducted a sales-tax audit on Baker for the period of January 1991 through July 1994. On August 26, 1994, DF&A's auditor issued a proposed assessment of $1,120,788.42 in additional sales taxes. Baker protested the audit, pursuant to Ark. Code Ann. § 26-18-404 (1987). A hearing was held before an administrative law judge (ALJ), pursuant to Ark. Code Ann. § 26-18-405 (Supp. 1995). On July 25, 1995, the ALJ ruled in favor of DF&A.

Thereafter, in August 1995, Baker formally requested DF&A's Commissioner of Revenues to revise and abate the ALJ's decision, also pursuant to section 26-18-405. In a letter issued on December 24, 1995, the Commissioner granted Baker's request and ordered a re-audit. DF&A's auditors issued a revised audit report on February 27, 1997, this time finding unreported sales taxes in the amount of $3,596,875.06.

Baker again protested the proposed assessment and sought further revision from DF&A. In May 1997, Wayne Baker and his accounting representatives met with Assistant Revenue Commissioner John Theis and DF&A's legal counsel. As a result of the meeting, Theis personally reviewed Baker's case. Eventually, after a number of revisions, on January 15, 1999, DF&A issued its final assessment, which reduced Baker's sales-tax deficiency to $278,366.89.

Baker did not appeal the final assessment under Ark. Code Ann. § 26-18-406(a) (Supp. 1999). In fact, Baker took no action at all until July 17 and August 9, 2002, when it made payments to DF&A in the amounts of $3,868.81 and $20,000.00 and noted that these payments were to be applied to four particular taxable periods covered by the assessment. On August 30, 2002, Baker

filed with DF&A a verified claim for refund and claims for abatement of sales taxes, pursuant to Ark. Code Ann. § 26-18-507 (Supp. 2001), seeking to recover the foregoing amounts on the theory that they were overpayments. DF&A took no formal action on Baker's verified claim.

Baker filed the present suit in circuit court on July 9, 2003, challenging both DF&A's final assessment and its failure to take any action on the verified claim for refund. The complaint also alleged that two of DF&A's employees, Auditor Ralph Mulder and Audit Supervisor John Martin, violated Baker's civil rights by allegedly assessing additional taxes to the corporation based on personal animus.

DF&A filed a motion to dismiss Baker's complaint, arguing that Baker's suit was, in reality, a challenge to the January 15, 1999, final assessment. As such, it was required to comply with the time limitations in section 26-18-406(a)(1), which provided that a taxpayer could seek judicial relief by paying the tax due for any taxable period or periods within one year of the final assessment and then filing suit within one year of the date of the payment. Alternatively, Baker could have posted a bond for double the amount of the entire assessment within thirty days of the issuance and service of the notice and demand for payment, and then filed suit within thirty days of the posting of the bond, pursuant to section 26-18-406(a)(2)(A). Because Baker did not follow either procedure in a timely manner, DF&A asserted that its sovereign immunity as a state agency was not waived and that the trial court therefore lacked jurisdiction to hear its claim.

DF&A argued that Baker's suit was not a proper claim for refund under section 26-18-507, as it contended that the remedies available under that section were only applicable to situations where a taxpayer has overpaid the amount of taxes due. It contended further that because Baker had only paid a portion of the amounts due under the final assessment, and had not timely challenged the amount of the final assessment, it had not paid any amount in excess of what was lawfully due. DF&A also argued that Baker's civil-rights claims were time barred because they were not filed within three years of the time that the conduct by Mulder and Martin was alleged to have occurred.

A hearing was held on the motion to dismiss on January 2, 2004. Thereafter, the trial court issued a letter to counsel granting DF&A's motion to dismiss, based on the court's finding that Baker

failed to file suit within the applicable time limitations. A formal order was entered on March 18, and a timely notice of appeal was filed by Baker on April 9.

For reversal, Baker argues that the trial court erred in dismissing its suit, because Act 1139 of 1997 had amended sections 26-18-406 and 26-18-507 to allow a taxpayer a third alternative means to challenge a final assessment of additional state taxes. It argues that this amendment allowed them to pursue their suit under the claim-for-refund method provided in section 26-18-507. Baker also argues that the trial court erred in allowing Assistant Revenue Commissioner John Theis to testify as to the legislative intent of Act 1139. Baker does not, however, make any assignment of error regarding the trial court's dismissal of its civil-rights claims.

■■ We note at the outset that we review a trial court's decision in a tax case *de novo*, but we will not disturb the trial court's findings of fact unless they are clearly erroneous. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001); *Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195, 871 S.W.2d 389 (1994). We also review issues of statutory construction *de novo*, as it is for this court to decide what a statute means. *Ghegan & Ghegan, Inc. v. Barclay*, 345 Ark. 514, 49 S.W.3d 652 (2001); *Barclay*, 344 Ark. 711, 42 S.W.3d 496. In this respect, we are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.*

■■ The main thrust of Baker's argument is that the trial court erred in interpreting sections 26-18-406 and 26-18-507, as amended by Act 1139 of 1997. The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Weiss v. McFadden*, 353 Ark. 868, 120 S.W.3d 545 (2003); *Mississippi River Transmission Corp v. Weiss*, 347 Ark. 543, 65 S.W.3d 867 (2002). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* An additional rule of statutory construction in the area of taxation cases is that when we are reviewing matters

involving the levying of taxes, any and all doubts and ambiguities must be resolved in favor of the taxpayer. *Id.*; *Barclay*, 344 Ark. 711, 42 S.W.3d 496.

■ At the time of Baker's suit, section 26-18-406, titled "Judicial relief," provided in pertinent part:

> (a) After the issuance and service on the taxpayer of the notice and demand for payment of a deficiency in tax established by an audit determination that is not protested by the taxpayer under § 26-18-403, or a final determination of the hearing officer or the director under § 26-18-405, a taxpayer may seek judicial relief from the final determination by either:

> (1) Within one (1) year of the date of the final assessment, paying the entire amount of state tax due, for any taxable period or periods covered by the final assessment and filing suit to recover that amount within one (1) year of the date of the payment. The director may proceed with collection activities, including the filing of a certificate of indebtedness as authorized under § 26-18-701, within thirty (30) days of the issuance of the final assessment for any assessed but unpaid state taxes, penalties, or interest owed by the taxpayer for other taxable periods covered by the final assessment, while the suit for refund is being pursued by the taxpayer for the other taxable periods covered by the final assessment; or

> (2)(A) Within thirty (30) days of the issuance and service on the taxpayer of the notice and demand for payment, filing with the director a bond in double the amount of the tax deficiency due and by filing suit within thirty (30) days thereafter to stay the effect of the director's determination.

Under this section, a taxpayer has three means of challenging a final assessment following an audit: (1) make payment of the entire amount assessed within one year from the date of assessment and then file suit challenging the assessment within one year of the date payment is made; (2) make payment on *any particular taxable period* covered by the assessment within one year of the date of the assessment and then file suit challenging the assessment of *that taxable period* within one year from the date payment is made; or (3) post a bond in double the amount of the entire assessment within thirty days of the date of the notice and demand for payment and then file suit challenging the assessment within thirty days of the posting of the bond.

Prior to the passage of Act 1139, section 26-18-406 did not allow a taxpayer to contest particular taxable periods, under a divisible tax theory, by paying only the taxes assessed on those periods and then filing suit to dispute those taxes, as was allowed under the federal tax law. *See Taber v. Pledger*, 302 Ark. 484, 791 S.W.2d 361, *cert. denied*, 498 U.S. 967 (1990). DF&A asserts that the Act's provision for a challenge to divisible tax periods was the only change made to the method for contesting an assessment of additional taxes following an audit.

Baker argues that Act 1139 went a step further in that it provided a fourth alternative to challenge an assessment of tax deficiency, by allowing a taxpayer to file a verified claim for refund under section 26-18-507. To support this contention, Baker points to the language of the Act's title, subtitle, and Section 10, which provided:

AN ACT TO AMEND THE ARKANSAS TAX PROCEDURE ACT TO CONFORM THE METHODS OF CONTESTING STATE TAX ASSESSMENTS AND FILING CLAIMS FOR REFUND TO THE SIMILAR TAX PROCEDURAL METHODS OF THE FEDERAL LAW FOR CONTESTING FEDERAL TAX ASSESSMENTS AND FILING CLAIMS FOR REFUND; AND FOR OTHER PURPOSES.

Subtitle

TO ALLOW A TAXPAYER THE ALTERNATIVE RIGHT TO CONTEST STATE TAX DISPUTES BY THE POSTING OF BOND METHOD OR THE CLAIM FOR REFUND METHOD WHERE THE DISPUTED TAXES HAVE BEEN FULLY PAID FOR AT LEAST ONE TAXABLE PERIOD.

. . . .

Section 10. The General Assembly intends, by the passage of this amendment to the provisions of the Arkansas Tax Procedure Act, to clarify its intent that taxpayers involved in state tax disputes with the Arkansas Department of Finance and Administration shall have, as much as possible, the opportunity to secure an objective review of their dispute by a court at law through: (1) the posting of bond method; (2) the payment after assessment method; or (3) the claim for refund method, after the payment by the taxpayer of all state taxes claimed to be due from the taxpayer for at least one

complete taxable period involved in the audit period. It is also intended by the General Assembly that the courts of this state are to recognize the "divisible tax theory" applicable to the review of federal tax dispute by federal courts, as also being applicable to the review of state tax disputes by the courts of this state.

Baker asserts that Act 1139 adopted the federal tax law in this area, and that federal law at the time allowed a taxpayer to challenge an assessment of additional tax by filing a claim for refund within three years from the time that the tax return is filed or within two years from the time that the tax was paid, whichever period expires later, or if no return was filed by the taxpayer, within two years of the time that the tax was paid.[1]

DF&A argues that the general language in Act 1139 concerning the conformation of state-law tax procedures to that of federal law cannot be used to contradict the plain language of section 26-18-507, which it asserts clearly provides for a claim for refund only where there is an erroneous overpayment of tax. It asserts that the legislature never intended to allow taxpayers to use the claim for refund method to challenge an assessment of a tax deficiency following an audit, which is how Baker is attempting to use it, and that section 26-18-507 was never meant to be a back-door means of challenging a final assessment once the time limitations in section 26-18-406(a) have expired. We agree.

At the time of Baker's claim, section 26-18-507 provided in pertinent part:

(a) *Any taxpayer who has paid any state tax to the State of Arkansas, in excess of the taxes lawfully due,* subject to the requirements of this chapter, *shall be refunded the overpayment of the tax determined* by the Director of the Department of Finance and Administration *to be erroneously paid* upon the filing of an amended return or a verified claim for refund. This subsection does not include actions based on Arkansas Constitution, Article 16, § 13.

(b) The claim shall specify:

(1) The name of the taxpayer;

---

[1] To support its claim, Baker offered a letter from the Department of Treasury, Internal Revenue Service, stating that 26 U.S.C. § 6511(a) provided such a procedure.

(2) The time when and the period for which the tax was paid;

(3) The nature and kind of tax paid;

(4) The amount of the tax which the taxpayer claimed was *erroneously paid*;

(5) The grounds upon which a refund is claimed; and

(6) Any other information relative to the payment as may be prescribed by the director. [Emphasis added.]

Subsection (e)(3) provided that a taxpayer could seek judicial relief under the provisions of section 26-18-406 from either a notice of a denial by the director of the claim for refund or the director's failure to issue a written decision, after that claim has been filed for six months.

■ The plain language of section 26-18-507 demonstrates that it applies to cases in which a taxpayer has erroneously overpaid taxes. Subsection (a) states that a taxpayer shall be refunded the overpayment of tax determined by DF&A's director "to be erroneously paid[.]" To get such a refund, the taxpayer must file a claim specifying, among other things, the amount of the tax that the taxpayer claims "was erroneously paid[.]" *See* section 26-18-507(b)(4). The payments made by Baker were not done so "erroneously." Rather, they were made deliberately so that Baker could challenge DF&A's final assessment.

■ The facts of this case are similar to those in *Taber*, 302 Ark. 484, 791 S.W.2d 361. There, the taxpayer, Taber, challenged DF&A's assessment of tax deficiency under both sections 26-18-406 and 26-18-507. This court held that his claim under section 26-18-406 was barred because he had not complied with the procedure in effect at the time, which required the taxpayer to pay the entire amount assessed or post a bond in double the amount before the taxpayer could file suit. This court held that section 26-18-507 was not applicable because Taber's claim was not one for erroneous overpayment of tax. This court explained:

Taber filed for a refund, following the procedure outlined in subsequent subsections of this statute, and it was denied. He reasserts his divisible tax argument with respect to this section, contend-

> ing that each of the payments he made was an overpayment because no tax was due. We do not consider this section to apply in this case. It deals with a taxpayer's overpayment through "error of fact, computation, or mistake of law." Taber paid under protest rather than through error. We have no doubt that his remedies fell under § 26-18-406, not § 26-18-507.

*Id.* at 488, 791 S.W.2d at 363. Although Baker is correct in stating that since our decision in *Taber*, the legislature has removed the language "error of fact, computation, or mistake of law," from section 26-18-507(a), our holding is still controlling, as the language pertaining to taxes that are "erroneously paid" remains in both subsections (a) and (b) of that statute. Thus, we conclude that the plain language demonstrates that section 26-18-507 applies only to those cases where a taxpayer has erroneously or mistakenly overpaid taxes, and not where a taxpayer pays the amount assessed deliberately in order to challenge a final assessment of additional taxes following an audit. The latter situation must be brought under the procedures set out in section 26-18-406(a).

 Because the language of these statutes plainly and unambiguously demonstrate that a taxpayer who wishes to challenge a final assessment of tax deficiency must comply with the procedures and time constraints set out in section 26-18-406(a), we must reject Baker's argument that Act 1139, through its title, subtitle, and Section 10, adopted all federal tax procedures regarding challenges to assessed tax deficiencies. In the first place, the title merely states in general language that the act is to amend state tax procedures for contesting assessments to conform to the similar federal procedural methods. This is not a situation like that in *Barclay*, 344 Ark. 711, 42 S.W.3d 496, where this court affirmed the trial court's application of the definition of "affiliated group" found in federal tax law to determine whether appellee-corporations comprised such an affiliated group. The state statute at issue in that case specifically instructed that the federal definition found in 26 U.S.C. § 1504(a) and (b) that was in effect at the time the statute was enacted was the definition to be used. In the present case, however, there is no specific adoption of or reference to a particular federal tax provision in Act 1139. Thus, Baker's reliance on *Barclay* is misplaced.

 In the second place, this court has long held that the title of an act is not controlling in its construction, although it

is considered in determining its meaning when such meaning is otherwise in doubt. *See, e.g., Henderson v. Russell,* 267 Ark. 140, 589 S.W.2d 565 (1979); *Cook v. Southeast Ark. Transp. Co.,* 211 Ark. 831, 202 S.W.2d 772 (1947); *Matthews v. Byrd,* 187 Ark. 458, 60 S.W.2d 909 (1933). The title may only be examined for the purpose of shedding light on the intent of the legislature. *Henderson,* 267 Ark. 140, 589 S.W.2d 565. Where, however, the statute is unambiguous, we will not resort to the title to determine legislative intent. *Id.; McDonald v. Bowen,* 250 Ark. 1049, 468 S.W.2d 765 (1971). Because we have already concluded that the language of sections 26-18-406 and 26-18-507 is plain and unambiguous, there is no need to search for the legislature's intent through the title of the act.

Likewise, we will not look to the legislature's statement of intent, found in Section 10 of Act 1139, in such a way as to contradict the plain language of the substance of that act, which is what Baker is asking us to do. The only specific reference in Section 10 to federal tax procedure is the divisible tax theory, which, as set out above, was specifically adopted by the legislature in its amendment to section 26-18-406(a).

Based on the above and foregoing, we conclude that section 26-18-507 was not designed for use by a taxpayer like Baker who wishes to challenge a final assessment of a tax deficiency following an audit. Rather, it was designed to provide an avenue of relief to those taxpayers who erroneously or mistakenly overpaid the amount of taxes due. The avenue for challenging a final assessment following an audit is by the procedures set out in section 26-18-406(a). If this were not clear enough from the plain language of those statutes, it was made abundantly clear with the passage of Act 1718 of 2003, which amended section 26-18-507 to specifically provide:

> (f)(1) This section shall not apply to taxes paid as a result of an audit or proposed assessment.
>
> (2) Taxes paid as a result of an audit or proposed assessment may not be recovered unless § 26-18-406 applies.

*See* Ark. Code Ann. § 26-18-507 (Supp. 2003). The stated purpose in passing Act 1718 was to clarify the procedure for appealing a tax assessment after payment. Thus, even though this amendment was not

in effect at the time that Baker filed its claim, we may consider it because the legislature specifically intended Act 1718 to be a clarification of existing law, not a change in the law. *See Pledger v. Baldor Int'l, Inc.*, 309 Ark. 30, 827 S.W.2d 646 (1992).

Finally, we reject Baker's suggestion that by passing Act 1139, the legislature intended to allow a taxpayer to pursue both the administrative remedies provided in sections 26-18-406 and 26-18-507. In response to questions from this court during oral argument, Baker's counsel stated that Act 1139 allowed a taxpayer to challenge the initial assessment following an audit; go through all the administrative review procedures offered in sections 26-18-404, -405, and -406; and then, following the issuance of a final assessment, seek a second administrative review by filing a claim for refund under section 26-18-507, thus beginning the process all over again. Counsel averred that such was the procedure under federal tax law.

We agree with DF&A that the procedures set out in section 26-18-406 and 26-18-507 are parallel administrative processes, one which allows a taxpayer to contest an assessment, and one which allows a taxpayer to obtain a refund of an erroneous overpayment of taxes. Here, there is no doubt that Baker was afforded the full panoply of administrative relief for contesting an assessment. Specifically, Baker protested the initial audit results, pursuant to section 26-18-404, and was given a hearing before an ALJ, pursuant to section 26-18-405. Following the ALJ's ruling in favor of DF&A, Baker formally requested the Commissioner of Revenues to revise and abate the ALJ's decision, also pursuant to section 26-18-405. The Commissioner then ordered a re-audit, which ultimately resulted in a greater tax deficiency. Again, Baker protested the proposed assessment and sought further revision. Again, the department obliged Baker by having its Assistant Revenue Commissioner personally review Baker's case. This review resulted in a final assessment which lowered considerably the amount of tax deficiency previously reported. The only part of this procedure that Baker did not avail itself of was the judicial review of the final assessment under section 26-18-406(a).

From our review of the foregoing tax statutes, it is abundantly clear that the procedures established in sections 26-18-404, -405, and -406 are specifically for the purpose of providing a taxpayer with the means of challenging DF&A's assessment of additional taxes due, while the procedures set out in section 26-18-507 are for the purpose of providing a taxpayer with the

means to seek a refund for taxes erroneously overpaid to DF&A. These procedures are distinct and parallel, such that a taxpayer may only take advantage of one or the other, depending on the nature of the claim. We find no support, either in the statutes themselves or in Act 1139, for Baker's assertion that the legislature intended to give the same taxpayer two opportunities for administrative review of the same claim.

 In sum, we affirm the trial court's dismissal of Baker's suit because it was a challenge to a final assessment following an audit and it was not timely filed under section 26-18-406. The state's sovereign immunity, found in Article 5, § 20, of the Arkansas Constitution, may be waived only in limited circumstances. *State v. Staton*, 325 Ark. 341, 942 S.W.2d 804 (1996). A trial court acquires no jurisdiction where the suit is one against the state and there is no waiver of sovereign immunity. *Id.* By enacting section 26-18-406, the legislature has permitted suits against the state's DF&A. However, there must be full compliance with this type of statute before sovereign immunity is waived. *Id.* (citing *Hercules, Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995)). The facts of this case show that DF&A issued its final assessment of tax deficiency on January 15, 1999. Baker had until one year later to make payment on any taxable periods covered by the assessment, and then one year from the date of payment to file suit in circuit court. Baker did not make any payments until July 2002, over three years after the final assessment. Accordingly, Baker did not comply with the provisions of section 26-18-406, and, consequently, the trial court acquired no jurisdiction over this suit.

 For his final point for reversal, Baker argues that the trial court erred in allowing DF&A's Assistant Commissioner John Theis to testify about the legislative intent in passing Act 1139 of 1997. Baker does not state how, if at all, it was prejudiced by the admission of this testimony. We will not reverse a trial court's evidentiary ruling without a demonstration of prejudice. *See Union Pac. R.R. Co. v. Barber*, 356 Ark. 268, 149 S.W.3d 325 (2004) (citing Ark. R. Evid. 103(a) for the proposition that evidentiary error may not be predicated upon a ruling that admits evidence unless it affects a substantial right of the party). Here, there can be no prejudice, because we conclude that the meaning of the statutes

as amended by Act 1139 is apparent from their plain language. Any additional information that Theis may have offered on the issue would have been superfluous.

Affirmed.