|13Affirmed.

2012 Ark. 166

**Corey McMILLAN, Individually and on Behalf of a Class of Similarly Situated Persons, Petitioner**

v.

**LIVE NATION ENTERTAINMENT, INC., and Ticketmaster, L.L.C. d/b/a Ticketmaster, Respondents.**

No. 11–732.

Supreme Court of Arkansas.

April 19, 2012.

Rehearing Denied May 24, 2012.

---

Todd Martin Turner, Daniel Odell Turner, Arnold, Batson, Turner & Turner, P.A., Rodney P. Moore, Wright, Berry, Moore & White, P.A., Arkadelphia, for petitioner.

Roger D. Rowe, Lax Vaughan, Fortson, Jones & Rowe, P.A., Little Rock, for the International Association of Venue Managers.

KAREN R. BAKER, Justice.

 This case involves a question of Arkansas law certified to this court by the United States District Court for the Eastern District of Arkansas in accordance with our Supreme Court Rule 6–8 (2011), and accepted by this court on July 27, 2011. *See McMillan v. Live Nation Entertainment, Inc.*, 2011 Ark. 302, 2011 WL 3212267 (per curiam). The certified question is as follows:

> Whether Arkansas Code Annotated section 5–63–201 is applicable to an exclusive agent of a public facility who sells music entertainment tickets that include in the price of the ticket additional fees, resulting in the price of the ticket being more than the face value and advertised price of the ticket?

We conclude that the answer is yes, section 5–63–201 applies to an exclusive agent who sells tickets that include in the price of the ticket additional fees.

Corey McMillan, individually and on behalf of a purported class, filed a complaint against Live Nation Entertainment, Inc., and Ticketmaster, L.L.C. d/b/a Ticketmaster (collectively Ticketmaster) alleging that Ticketmaster charged fees in excess of the printed ticket price to musical or entertainment events in Arkansas. McMillan contended that in order to attend a musical event at Verizon Arena (Verizon) he was required to buy his four tickets from Ticketmaster, which charged him $220.60, although the face amount of each ticket was $42.75. Each ticket ultimately cost $55.15, and the charges in addition to the face amount of each ticket were designated as a $2.00 per ticket facility charge, a $9.40 per ticket convenience charge, and a $4.00 processing fee for the entire order. McMillan asserted that the additional charges violate Arkansas Code Annotated section 5–63–201(a)(1)(B) (Repl. 2005), which makes it unlawful for any person, corporation, firm, or partnership to sell or offer for sale any ticket to "[a]ny music entertainment event at a greater price than that printed on the ticket or the box office sale price plus any reasonable

charge for handling or credit card use, whichever is greater." McMillan alleged that selling tickets at prices greater then the face value of the tickets is deceptive, unfair, and unconscionable and violates the Arkansas Deceptive Trade Practices Act, codified at Arkansas Code Annotated section 4–88–101 et seq. (ADTPA). McMillan also stated a claim for unjust enrichment.

Ticketmaster filed a motion to dismiss alleging that its sales were first-party ticket sales and that section 5–63–201 is not applicable to first-party ticket sales. Ticketmaster argued that because the fees it charged were permissible, it had not violated section 5–63–201, and the complaint failed to state a claim for violation of the ADTPA or unjust enrichment. McMillan filed a response, stating that because the fees charged by Ticketmaster were unlawful under section 5–63–201, such conduct violated the ADTPA.

As a threshold matter, we note that the certification order states that the federal district court, on its own, seeks review of the question before this court. This is significant as the question posed by the federal court is distinct—though clearly intertwined—from the issues presented in the complaint and the motion to dismiss. Thus, we offer no opinion on whether the additional fees or charges by Ticketmaster violate section 5–63–201 or whether a violation of section 5–63–201 constitutes an unfair trade practice under the ADTPA.[1] Our inquiry is limited solely to the certified question.

Arkansas Code Annotated section 5–63–201 (Repl.2005) is entitled "Tickets to school athletic events or music entertainment events—Sale in excess of regular price" and provides as follows:

(a)(1) It is unlawful for any person, corporation, firm, or partnership to sell or offer for sale any ticket to:

(A) A high school or college athletic event or to an athletic or other event held for the benefit of charity at a greater price than that printed on the ticket; or

(B) Any music entertainment event at a greater price than that printed on the ticket or the box office sale price plus any reasonable charge for handling or credit card use, whichever is the greater.

(2) This subsection shall not apply to an institution of higher education that receives funds per ticket above the face value of that ticket.

(b)(1) Any person, corporation, firm, or partnership violating any provision of this section is guilty of a violation and upon conviction shall be fined in any sum not less than twenty-five dollars ($25.00) nor more than five hundred dollars ($500).

(2) Every sale or offer for sale is a separate offense.

McMillan argues that the statute is unambiguous and applies to Ticketmaster because it is a corporation selling tickets at a price greater than that printed on the ticket or the box office price. Ticketmaster agrees that the statute is unambiguous, but asserts that the statute does not apply to it because the "price printed on the ticket or box office price" refers to the price that the venue charges for tickets, whether it sells the tickets itself or engages an agent such as Ticketmaster to sell the tickets for it. Ticketmaster adds that whether a venue chooses to sell tickets in person, over a telephone, or over the

---

1. Both dissents focus on whether Ticketmaster is guilty of scalping under the facts alleged in the complaint and the motion to dismiss. While we have the authority under Arkansas Supreme Court Rule 6–8(c)(1) to reformulate the certified question, we have not broadened the question to encompass such an analysis.

Internet, the first-party sale by the venue—or its agent—sets the box office sale price for purposes of section 5–63–201.

The cardinal rule of statutory construction is to construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Central Ok. Pipeline, Inc. v. Hawk Field Servs., LLC,* 2012 Ark. 157, 400 S.W.3d 701. When the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need to resort to rules of statutory interpretation. *Id.* In other words, when the language of the statute is not ambiguous, the analysis need not go further and we will not search for legislative intent; rather, the intent is gathered from the plain meaning of the language used. *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha,* 344 Ark. 44, 38 S.W.3d 356 (2001). Thus, an unambiguous statute presents no occasion to resort to other means of interpretation as "[i]t is not allowable to interpret what has no need of interpretation." *City of Little Rock v. Ark. Corp. Comm'n,* 209 Ark. 18, 21, 189 S.W.2d 382, 384 (1945).

Here, the language employed by the General Assembly is so plain and unambiguous that judicial construction is limited to what was said.[2] Section 5–63–201 makes it unlawful to sell any ticket at a greater price than that printed on the ticket or the box office sale price plus any reasonable charge for handling or credit card use,

whichever is greater. Thus, the beginning point is the greater price of either what is printed on the actual ticket or what is charged by the box office. The only additional amount that can be charged is a reasonable charge for handling or credit card use. The statute is specifically applicable to any "person, corporation, firm, or partnership" and does not exclude exclusive ticket agents. Thus, it is applicable to exclusive agents of a public facility who sell music entertainment tickets that include in the price of the ticket additional fees, resulting in the price of the ticket being more than the face value and advertised price of the ticket, unless those fees are a reasonable charge for handling or credit card use.

Ticketmaster argues that as the exclusive and authorized agent of Verizon it is empowered to do anything that Verizon can do, which means that it essentially becomes the box office and the price at which it sells its tickets constitutes the box office sales price. Contrary to Ticketmaster's assertion, the "box office sale price" clearly means the price a ticket is sold for at the box office. The plain and ordinary meaning of "box office" is a booth, as in a theater or stadium, where tickets are sold. *See Merriam–Webster's Collegiate Dictionary* 148 (11th ed.2003). While technology has certainly changed since the passage of the statute in 1993, tickets to entertainment events could always be sold at locations other than the box office through

2. Both dissents argue that section 5–63–201 is ambiguous because it can be reasonably construed to support the interpretation of Ticketmaster and the interpretation of McMillan. We disagree. Ticketmaster's interpretation hinges on the statute only applying to the resale of tickets. This construction is unreasonable because the plain language of the statute does not limit it to the resale of tickets. This court "will not add words [to a statute] to convey a meaning that is not there." *Kildow v. Baldwin Piano & Organ,* 333 Ark. 335,

339, 969 S.W.2d 190, 192 (1998). Adding words to a statute that is not ambiguous disregards the legislature's intent. *Id.*

Both dissents also argue that legislative intent can be found in the title to section 5–63–201. However, titles and descriptive headings used in the Arkansas Code do not constitute part of the law and shall in no manner limit or expand the construction of any section. Ark.Code Ann. § 1–2–115(b) (Repl. 2008); *see also R.N. v. J.M.,* 347 Ark. 203, 61 S.W.3d 149 (2001).

exclusive agents. Such transactions do not transform the place of such sales into the "box office."

■ Additionally, when a statute is unambiguous, the rules of statutory construction do not permit us to read into it words that are not there. *Scoggins v. Medlock*, 2011 Ark. 194, 381 S.W.3d 781. The legislature made an exception for institutions of higher education in section 5–63–201(a)(2), but it did not exclude exclusive ticket agents, and we will not by judicial fiat amend the statute to address concerns that are properly the province of the General Assembly. It is the function of the General Assembly to offer remedial legislation to address perceived statutory inadequacies. *See Oldham v. Morgan*, 372 Ark. 159, 271 S.W.3d 507 (2008) (acknowledging that this court leaves the task of rewriting statutes to the General Assembly).

Because Arkansas Code Annotated section 5–63–201 by its plain and unambiguous language applies to a person, corporation, firm, or partnership and does not exclude exclusive ticket agents, we answer the certified question in the affirmative.

Certified question answered.

HANNAH, C.J., BROWN and GOODSON, JJ., dissent.

HANNAH, C.J., dissenting.

I respectfully dissent. The majority declares that Arkansas Code Annotated section 5–63–201 (Repl.2005) is "so plain and unambiguous that judicial construction is limited to what was said" although three justices of this court find that the statute is ambiguous. Both McMillan and Ticketmaster argue that the statute is unambiguous, yet each offers a different and conflicting reasonable interpretation. A statute is ambiguous when it is open to two or more reasonable constructions. *See Wickham v. State*, 2009 Ark. 357, at 5, 324 S.W.3d 344, 347. McMillan argues that the statute applies to Ticketmaster because (1) it is a corporation selling tickets, and (2) it may not sell tickets at a price greater then the "price printed on the ticket or the box office price." Ticketmaster argues that the statute does not apply to Ticketmaster because the "price printed on the ticket or box office price" refers to a sale of the tickets setting the price that may not be exceeded; in other words, Ticketmaster contends that the statute applies only to resale of the tickets.[1] Under this construction, as Ticketmaster is the seller in the first instance, the statute does not apply to its activities. Section 5–63–201 can be read to provide

---

1. The majority asserts that this dissent adds words to the statute in order to reach the conclusion that the statute is ambiguous. Simple reference to the discussion above reveals that this dissent relies on quoted language from the statute, "price printed on the ticket or the box office price" and "price printed on the ticket or box office price." The majority's assertion is inaccurate.

The majority also asserts that this dissent attempts to impermissibly limit or expand the construction of section 5–63–201 by resorting to the titles and descriptive headings, and cites Arkansas Code Annotated section 1–2–115(b) (Repl.2008); *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001). Section 1–2–

115(b) and *R.N.*, refer to the principle that titles and descriptive headings do not constitute part of the law. *See R.N.*, 347 Ark. at 210, 61 S.W.3d at 153. Neither the title nor the descriptive headings are cited to limit or expand the law. The majority ignores elementary principles of statutory interpretation and confuses the law. Where a statute is ambiguous, titles are examined to shed light "on the intent" of the General Assembly. *Baker Refrigeration Sys., Inc. v. Weiss*, 360 Ark. 388, 400, 201 S.W.3d 900, 907 (2005); *Henderson v. Russell*, 267 Ark. 140, 145, 589 S.W.2d 565, 568 (1979); *Lyerley v. Manila Sch. Dist. No. 15*, 214 Ark. 245, 250, 215 S.W.2d 733, 736 (1948). The title and de-

as McMillan argues, but it can also be read to provide as Ticketmaster argues. Both constructions are reasonable. Section 5–63–201 is ambiguous.

When a statute is ambiguous, it is interpreted according to legislative intent, and the court's review looks to the entire act. *See Roberson v. State,* 2010 Ark. 433, at 1, 2010 WL 4524561. Further, as a penal statute, section 5–63–201 is strictly construed, and all doubts are resolved in favor of the defendant. *Magness v. State,* 2012 Ark. 16, at 4, 386 S.W.3d 390, 393. A penal statute must be construed to avoid, as opposed to create, criminal liability. "The courts cannot and should not, by construction or intendment, create offenses under statutes that are not in express terms created by the legislature." *Williams· v. State,* 347 Ark. 728, 742, 67 S.W.3d 548, 556 (2002). This court is without authority to declare an act to come within the criminal laws of this state by implication and nothing is taken as intended which is not clearly expressed. *Heikkila v. State,* 352 Ark. 87, 90, 98 S.W.3d 805, 807 (2003).

The court also looks to the title of the statute to determine legislative intent where the statute's meaning is in doubt. *See Baker Refrigeration Sys., Inc. v. Weiss,* 360 Ark. 388, 400–01, 201 S.W.3d 900, 907 (2005). The title to the statute indicates that it concerns sales "in excess of regular price." The term "regular price" implies, consistent with Ticketmaster's argument and this court's duty to construe the statute in its favor, that the tickets must first be sold to establish the "regular price," the price above which the statute prohibits their sale.

Further, section 5–63–201(a)(1)(B), relied on by McMillan to create criminal liability, was added by 1993 Arkansas Act

565 and titled, "AN ACT to Amend Arkansas Code Annotated § 5–63–201 to Prohibit Scalping of Tickets to Athletic and Other Events Held for the Benefit of Charity; and for Other Purposes." Therefore, the title to Act 565 indicates that the language the majority finds "so plain and unambiguous that judicial construction is limited to what was said" was never intended to apply to an exclusive agent of a public facility that sells tickets in the first instance; it is intended to control "ticket scalping."

> "Ticket scalping" is the common name given to the practice of selling tickets to popular entertainment events at prices which greatly exceed the established price for those tickets. The purpose of an anti-scalping law is to enforce the public policy of protecting against the sale at exorbitant prices of tickets being sold by unscrupulous promoters and others who make enormous profits on ticket resales. The public welfare is advanced by having all tickets freely available for sale to the general public either at face value directly from the event sponsor, or at somewhat higher than face value from a ticket distributor acting with permission of the event sponsor.

30A C.J.S. *Entertainment and Amusement* § 155 (2007). McMillan asserts that Ticketmaster acts with permission of the sponsor, stating that Ticketmaster "has the exclusive right to sell all tickets for any Verizon attraction which is made available to the public." Consistent with the language from Corpus Juris Secundum, at issue are tickets sold at "somewhat higher than face value from a ticket distributor acting with permission of the event sponsor," which excludes Ticketmaster from being a ticket scalper subject to the statute. Finally, resale of tickets is not at issue in the present case.

scriptive headings are cited to reveal the intent of the General Assembly.

Strictly construing the statute, resolving every doubt in favor of Ticketmaster, and taking into account the language and the specific reference to "ticket scalping" in the title to the 1993 act adding section 5–63–201(a)(1)(B), the court must conclude that section 5–63–201 is not applicable in this case. The certified question of law should be answered in the negative. Section 5–63–201 is not applicable to an exclusive agent of a public facility that sells music entertainment tickets in the first instance.

I also note that the majority asserts that it does not decide the question of whether charging the fees at issue constitutes a violation of section 5–63–201. However, by wholly ignoring precedent on statutory interpretation and improperly concluding that Ticketmaster falls within the parties prohibited by the statute from charging the very fees at issue, the majority firmly establishes Ticketmaster's criminal liability. McMillan asserts in his brief that "Ticketmaster's practices are in violation of the ADTPA and A.C.A. § 5–63–201."

The majority has abandoned its judicial role as the interpreter of the statute and by ignoring the clear legislative intent has assumed the legislative role of declaring an act criminal. Legislative intent makes it clear that section 5–63–201 was never intended to apply to an exclusive agent selling tickets in the first instance. "The public policy of the State of Arkansas is declared by the General Assembly, not its courts." *State v. Lester*, 343 Ark. 662, 669, 38 S.W.3d 313, 317 (2001). As it legislates, the majority hides behind the trappings of the judiciary by declaring an ambiguous statute unambiguous, and by that declaration conveniently avoids the fact that the title to the act containing the very language at issue limits criminal liability to ticket scalpers. The majority ignores this court's precedent and the longstanding principle that all penal statutes must be strictly construed.

The instant case calls on us to interpret section 5–4–205. This court reviews issues of statutory interpretation de novo, as it is for this court to decide the meaning of a statute. *We construe criminal statutes strictly, resolving any doubts in favor of the defendant.* We also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to rules of statutory interpretation.

*Brown v. State*, 375 Ark. 499, 502, 292 S.W.3d 288, 290 (2009) (citations omitted) (emphasis added). The rule of strict construction is long standing:

> It is a rule, never to be departed from, that criminal statutes must be strictly construed. This rule is founded alike upon policy as well as humanity, designed for the protection of the citizen, unless he is clearly charged, and proven guilty, of a violation of a positive enactment of law.

*Hughes v. State*, 6 Ark. 131, 134 (1845). By any analysis, Ticketmaster is not scalping tickets; it is the seller in the first instance. The statute is inapplicable to Ticketmaster. Therefore, I dissent.

BROWN and GOODSON, JJ., join.

BROWN, J., dissenting.

The majority's interpretation of Arkansas Code Annotated section 5–63–201 leads to absurd results that are plainly contrary to legislative intent. Ticketmaster, as the exclusive agent of Verizon Arena, is the first-time seller of the tickets at issue in

this case and sets the box office sale price. It is not a scalper. I would not deem Ticketmaster guilty of criminal conduct under these circumstances. For that reason, I dissent.

The statute in question is a criminal statute that makes it unlawful "for any person, corporation, firm, or partnership to sell or offer for sale any ticket to . . . [a]ny music entertainment event at a greater price than that printed on the ticket or the box office sale price plus any reasonable charge for handling or credit card use, whichever is the greater." Ark.Code Ann. § 5–63–201(a)(1)(B) (Repl.2005). Violation of the statute carries with it a fine of not less "than twenty-five dollars ($25.00) nor more than five hundred dollars ($500)." Ark.Code Ann. § 5–63–201(b)(1). Every sale or offer for sale is a separate offense and each offense is classified as a violation. Ark.Code Ann. § 5–63–201(b).

This court reviews issues of statutory construction de novo because it is for this court to determine the meaning of a statute. *Dachs v. Hendrix,* 2009 Ark. 542, 354 S.W.3d 95 (2009). Our rules of statutory construction are well settled. When we review issues of statutory interpretation, we first construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *McCourt Mfg. Corp. v. Rycroft,* 2009 Ark. 332, 322 S.W.3d 491 (2009). When the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used, and we do not resort to the rules of statutory construction. *Id.*

This court, however, will not give statutes a literal interpretation if it leads to absurd consequences that are contrary to legislative intent. *Brock v. Townsell,* 2009 Ark. 224, 309 S.W.3d 179. If the statute is ambiguous, this court looks to the legislative history of the statute and other fac-tors, such as the language used and the subject matter involved. *Rycroft,* 2009 Ark. at 5, 322 S.W.3d at 495. A statute is ambiguous only where it is open to two or more reasonable interpretations, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *DaimlerChrysler Corp. v. Smelser,* 375 Ark. 216, 289 S.W.3d 466 (2008).

An integral part of our canons of construction is that a criminal statute must be strictly construed and all doubts resolved against criminality. *Heikkila v. State,* 352 Ark. 87, 98 S.W.3d 805 (2003). Furthermore, this court cannot create offenses which are not expressly created by the Legislature. *Id.* We also have no authority to declare that a person's actions come within the criminal laws of this State merely by implication. *Id.* Nothing is taken as intended which is not clearly expressed. *Id.*

Despite the majority's assertion to the contrary, the plain language of section 5–63–201 *is* ambiguous. A "sale" is a "transfer of property or title for a fixed price in money or its equivalent." Black's Law Dictionary 1337 (6th ed.1990); *see also Meyer v. Rousseau,* 47 Ark. 460, 2 S.W. 112, 113 (1886) ("A sale is an exchange of goods or property for money paid, or to be paid."). Ticketmaster's interpretation, that the language of the statute requires that there first be a ticket sale establishing the price of the ticket, is a reasonable interpretation, in light of the fact that "sale" means a transfer of property for a fixed price. Under Ticketmaster's interpretation, it is the *first sale* that establishes the sale price.

Another reasonable interpretation of the statute is that the ticket price and the "box office sale price" are both contemplated and set prior to any actual "sale" taking place. For example, if a person went to

the Verizon Arena's website and looked up the ticket price for an event, that person would see the total price quoted for that ticket. This price, as reflected on the website, includes a charge for the ticket, plus a facility fee and a convenience fee. Because that person can view the total price of a ticket prior to actually purchasing that ticket, it is reasonable to interpret "ticket price" or "box office sale price" to include the price at which a ticket to an event *will be* sold in the first instance. *See Meyer,* 47 Ark. 460, 2 S.W. at 113 ("A sale is an exchange of goods or property for money paid, *or to be paid.*") (emphasis added).

Further, the term "box office sale price" could be interpreted in one of two ways. It could mean the price quoted at the actual, physical box office, which is located on the premises of Verizon Arena, where customers purchase tickets to events at the Arena, as the majority holds. It also could be interpreted to include the sale price quoted over the telephone or over the internet by Verizon Arena's exclusive agent, Ticketmaster. As emphasized by Ticketmaster, if the term "box office sale price" did not include sales by telephone or over the internet, then fees charged by a venue at the physical box office location would be legal, but those same fees, if charged over the telephone or internet, would result in violation of this statute and criminal liability.

Because the language of the statute is open to two or more reasonable constructions, the statute is ambiguous. *Smelser,* 375 Ark. 216, 289 S.W.3d 466 (2008). Our duty then is to look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, and the legislative history in order to determine the legislative intent behind the statute. *Baker Refrigeration Systems, Inc. v. Weiss,* 360 Ark. 388, 201 S.W.3d 900 (2005). Although the title of an act is not controlling in its construction, we do consider it in determining the act's meaning when the meaning is otherwise in doubt. *Id.* The title may then be examined for the purpose of shedding light on the intent of the legislature. *Id.*

When the General Assembly enacted section 5–63–201, it made it clear that the statute was enacted to prohibit *secondary* sales of tickets at prices above which they were sold by the venue. The provision of section 5–63–201, which added the subsection concerning the sales of tickets to musical events that is at issue in the instant case, was added when the General Assembly amended the statute in 1993. *See* Act of Mar. 17, 1993, No. 565, 1993 Ark. Acts 1669. According to the General Assembly, Act 565 was an act "to Amend Arkansas Code Annotated § 5–63–201 *to Prohibit the Scalping of Tickets* to Athletic and Other Events Held for the Benefit of Charity; and for Other Purposes."

"Ticket Scalping" is a commonly-used term for the practice of *reselling* previously purchased tickets at prices which greatly exceed the established price of those tickets. *See, e.g., Diversified Group, Inc. v. Sahn,* 259 A.D.2d 47, 696 N.Y.S.2d 133 (1999) (purpose of anti-scalping law is to enforce public policy of protecting against the sale at exorbitant prices of tickets being resold by unscrupulous promoters and others who make enormous profits on ticket resales); *State v. Major,* 243 Ga. 255, 253 S.E.2d 724 (1979) (by prohibiting the practice of "scalping" tickets, the statute in question was reasonably related to the proper legislative objective of regulating the resale price of tickets to places of entertainment and amusement). Additionally, "scalp" is defined as "to obtain and resell ... at prices greatly above the stated rates without official sanction." Web-

ster's Third New International Dictionary 2024 (2002). The above-referenced definitions, like section 5–63–201, contemplates tickets being resold at inflated prices by someone other than the event promoter.

The title of section 5–63–201 is "Tickets to school athletic events or music entertainment events—Sale in excess of regular price." As noted above, a statute's title may be considered when determining legislative intent. *Weiss*, 360 Ark. 388, 201 S.W.3d 900 (2005). The word "regular" means "[u]sual, customary, normal or general." Black's Law Dictionary 1285 (6th ed.1990). The regular price, as Ticketmaster correctly argues, is the price that is charged by the *first-party* seller, and not a secondary seller who is scalping tickets.

With today's interpretation by the majority, all *first-party* ticket sellers across the State, will be subject to fines for a criminal violation if they charge fees similar to those charged by Ticketmaster. This absurd result is not what the General Assembly intended, and, again, criminal statutes must be strictly construed in favor of Ticketmaster and should not create offenses which are not included in the express terms by the Legislature. *See Heikkila*, 352 Ark. 87, 98 S.W.3d 805 (2003).

It is absolutely clear, after considering the legislative history, that the General Assembly intended to make the conduct of people engaged in "ticket scalping" a criminal violation and not that of first-party sellers, or their exclusive agents, such as Verizon Arena and Ticketmaster. Accordingly, this court should answer the certified question in the negative.

HANNAH, C.J., and GOODSON, J., join this dissenting opinion.