ROBERT J. GLADWIN, Judge
The Madison County Circuit Court terminated Fred Northcross's parental rights by order filed November 21, 2017. Northcross appeals, arguing that the statutory grounds relied on by the circuit court are not legally applicable to him; thus, he claims that the termination-of-parental-rights (TPR) order must fail. We agree with Northcross's argument and reverse and remand to the circuit court.
I. Facts and Procedural History
Appellee Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect (DN) on June 6, 2017, alleging in the attached affidavit that Northcross had been arrested for possession of methamphetamine and child endangerment on June 1, 2017. Northcross was identified in the petition as the putative father of two children, C.G., born February 28, 2014, and K.G., born May 11, 2016. The children were with Northcross at the time of his arrest, but he denied knowing *920 them. Their mother, Tracy George, tested positive for methamphetamine and amphetamines when she arrived to retrieve them.[1] She later admitted to daily methamphetamine use. DHS took a 72-hour hold on the children, and the circuit court filed an ex parte order for emergency custody reflecting that DHS had been involved with the family since 2009 and that the family had been provided with counseling, drug screens, and drug rehabilitation in the past. However, these services did not prevent removal, as both parents continued to be involved with drugs as described.
The probable-cause order states that Northcross is the putative father and that probable cause existed for the children to remain in DHS custody. George and Northcross were ordered to comply with all requirements contained in the order. Northcross was also ordered to resolve all criminal charges.
In the adjudication-and-disposition order, Northcross was again listed as the putative father. The circuit court found by a preponderance of the evidence that the children were DN due to neglect and parental unfitness, noting the use and dealing of illegal drugs by the parents and Northcross's denial that he knew the children when he was arrested. The circuit court found that the children had been subjected to aggravated circumstances and that there was little likelihood that services to the family would result in successful reunification. The circuit court noted that the parents had their rights previously terminated on another child due to the same issues present in this case.[2]
DHS filed a TPR petition on July 31, 2017, alleging that Northcross is the putative father and that paternity had not been established. DHS listed the statutory grounds of aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(A) (Supp. 2017), and prior involuntary termination of parental rights to a sibling of the child, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(4) . DHS alleged that the children would be subjected to potential harm if returned to the custody of George and Northcross.
A no-reunification-services and permanency-planning order reiterated that the children had been removed from the home and placed in DHS custody because their parents were using and selling illegal drugs. Further, Northcross was listed as the putative father. The circuit court changed the goal of the case to adoption and found that the parents were not complying with the case plan. Specifically, the circuit court found that Northcross, the putative father, had not complied with any of the court orders or the case plan. The circuit court found that he had made minimal progress toward alleviating the cause of the children's removal from the home and completing the court orders and requirements.
Northcross was notified of his right to have an attorney represent him at the termination hearing, and he was allowed visitation once a week for one hour. He was also ordered to have a drug-and-alcohol assessment, follow the recommendation, and attend "Celebrate Recovery at the skating rink." Northcross was ordered to submit to DNA testing and resolve the *921 issue of paternity. Northcross was given two weeks to complete the DNA testing and sign a release of information if he were to be accepted into drug court. If accepted into drug court, Northcross was to successfully complete it and follow the rules.
The circuit court specifically found that DHS proved by clear and convincing evidence that the "mother and father" had subjected the children to aggravated circumstances. Those circumstances were that there was little likelihood that services to the family would result in successful reunification because "the parents" had previously received services for the same issues in a prior case that resulted in the placement of two siblings with relatives.
DHS filed an amended TPR petition listing Northcross as the putative father and alleging that at the time of removal of the children, he had physical care and control of them. DHS asserted that DNA testing revealed that Northcross is the biological father of both children. DHS alleged that the circuit court had appointed counsel to Northcross at the permanency-planning hearing, that Northcross had sufficient contacts with the children for parental rights to attach, and that the court should terminate those rights. DHS asked for a specific finding that parental rights had attached or that they had not. If they had not, DHS asked that the circuit court dismiss Northcross because it is reversible error to terminate rights when those rights do not exist. If rights had attached, DHS asked that the circuit court terminate Northcross's parental rights because there were grounds to do so and it was in the children's best interest. DHS alleged the grounds of "other factors" or issues that arose subsequent to the filing of the original petition, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) , and "aggravated circumstances," Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B)(i) .
After a hearing on October 27, 2017, the circuit court ordered that Northcross's parental rights should be terminated based on the statutory grounds listed in DHS's petition. However, the order contains no finding that Northcross is the parent. Northcross is listed in the style of the order as "putative father" but is included in the order's opening paragraph listing those present as "Father, Fred Northcross." In paragraph 2 of the termination order, the circuit court found that "[t]he father was served pursuant to Rule 4, specifically the father was served through substitute service while incarcerated[.]" The circuit court noted in the same paragraph that "both parents have received proper notice of this proceeding." Northcross is referred to as "father" in the circuit court's findings regarding both statutory grounds, save for one reference to him as the "putative father," and both parties are referred to collectively as "parents."
The circuit court found that it was in the children's best interest that parental rights be terminated and specifically considered the likelihood that they would be adopted. The circuit court also found that it had considered the potential harm to the children if placed back in their parents' custody.
II. Standard of Review and Applicable Law
Northcross filed a timely notice of appeal. On appeal, he challenges the legality of the circuit court's order because Northcross was listed as the "putative" father and the grounds for termination pertain to the "parent." Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents.
*922 Earls v. Ark. Dep't of Human Servs. , 2017 Ark. 171, 518 S.W.3d 81. We review termination-of-parental-rights cases de novo. Harjo v. Ark. Dep't of Human Servs. , 2018 Ark. App. 268, 548 S.W.3d 865. At least one statutory ground must exist, in addition to a finding that it is in the children's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341 ; Kohlman v. Ark. Dep't of Human Servs. , 2018 Ark. App. 164, 544 S.W.3d 595. We will not reverse the circuit court's ruling unless its findings are clearly erroneous. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. Id.
[W]e review issues of statutory interpretation de novo, as it is for this court to decide what a statute means. Baker Refrigeration Sys., Inc. v. Weiss , 360 Ark. 388, 201 S.W.3d 900 (2005) ; Monday v. Canal Ins. Co. , 348 Ark. 435, 73 S.W.3d 594 (2002). Thus, although we are not bound by the trial court's interpretation, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. Id.
The basic rule of statutory construction is to give effect to the intent of the legislature. Ward v. Doss , 361 Ark. 153, 205 S.W.3d 767 (2005) ; Arkansas Tobacco Control Bd. v. Santa Fe Natural Tobacco Co., Inc. , 360 Ark. 32, 199 S.W.3d 656 (2004). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. Id. In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. We construe the statute so that no word is left void, superfluous or insignificant, and we give meaning and effect to every word in the statute, if possible. Id.
Dep't of Human Servs. v. Howard , 367 Ark. 55, 61-62, 238 S.W.3d 1, 5-6 (2006). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Stephens v. Ark. Sch. for the Blind , 341 Ark. 939, 20 S.W.3d 397 (2000) ; Burcham v. City of Van Buren , 330 Ark. 451, 954 S.W.2d 266 (1997).
In Earls , supra , the circuit court held that two grounds had been met when it terminated Mr. Earls's parental rights, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(b) (child out of home of noncustodial parent for twelve months and conditions causing removal not remedied) and § 9-27-341(b)(3)(B)(ii)(a) (child out of home of parent for twelve months and parent failed to provide significant material support). Earls , 2017 Ark. 171, at 8-9, 518 S.W.3d at 86. Mr. Earls argued that the circuit court erred in both findings because the statute requires that the child must have lived out of the custody of the "parent" or noncustodial "parent" for twelve months. Id. at 9, 518 S.W.3d at 87. Mr. Earls claimed that at the time of the termination hearing, he had not been found to be the "parent." Id.
The record demonstrated that although it was determined through a paternity test that Mr. Earls is the father, and the test results were admitted into evidence at the permanency-planning hearing, the circuit court did not recognize Mr. Earls as the biological father and continued to treat him as a putative father. Id. In the circuit court's permanency-planning order, the circuit court referred to Mr. Earls as the putative father. Id. at 9-10, 518 S.W.3d at 87. In its petition for TPR, DHS listed Mr. Earls as putative father. Id. at 10, 518 S.W.3d at 87. At the termination hearing, the circuit court recognized that Mr. *923 Earls's legal status needed to be addressed, and a colloquy of the circuit court's comments to that effect was reproduced in the Arkansas Supreme Court's opinion. Id. The supreme court also noted that the record did not contain an order establishing Mr. Earls's legal status and that the termination order listed him as the putative father. Id.
Applying the rules of statutory construction, our supreme court held that the record failed to demonstrate that Mr. Earls's legal status as a either putative parent or a biological parent had been established. Id. at 11, 518 S.W.3d at 88. The court recognized that Mr. Earls had been appointed counsel for the termination hearing and was "afforded rights as a parent." Id. However, the court held that the record did not demonstrate that his legal status as the biological parent had been established to apply the twelve-month time period described in the statute. Id. In a footnote, the court stated,
Even assuming that the dissent is correct that the circuit court's vague statement in the March 30, 2016 termination hearing, "I have ... DNA test results with Mr. Earls at a 99.9 percent probability that he's the father of the twins," established that Earls was the legal father, the 12-month statutory requirement has not been met. See Ark. Code Ann. § 9-27-341. Further, at the termination hearing, the circuit court explained it had continued the hearing because the circuit court had not entered findings regarding Earls's "legal standing." Immediately after stating that the DNA results demonstrated Earls was the father, the circuit court recognized that it "should have had Mr. Earls before the court attempting to meet his burden to determine where he falls. I guess he falls legally since we've got that, doesn't he?" The circuit court ended the colloquy regarding Earls's legal status with a question, not a finding.
Id. at 11 n.2, 518 S.W.3d at 88 n.2. The supreme court reversed, concluding that "Earls's rights had not attached to then be terminated" and noted that its interpretation supported the goal of our juvenile system provided in Ark. Code Ann. § 9-27-302 to assure that juveniles who are brought to the courts' attention receive the guidance, care, and control, preferably in each juvenile's own home, and to provide a means for a fair hearing and enforcement of the parties' constitutional and other legal rights. Id. at 11-12, 518 S.W.3d at 88.
III. "Putative Parent" vs. "Parent"
Northcross argues that just as in Earls , the circuit court erred in terminating his parental rights when it employed two grounds against him that pertain only to a "parent," because he was treated at all times as a "putative parent," including in the termination order. He claims that because the grounds cited by the circuit court are not legally applicable to him, the termination order must fail.
Northcross contends that despite DHS's submission of his DNA test result that reflected a 99.99 percent probability of paternity on both children and its admission into evidence, the circuit court never entered an order finding him to be the legal father. He further claims that DHS did not correct the oversight when it drafted the termination order and "listed" him as the "putative father." Northcross also points to the circuit court's statement at the close of the termination hearing that "I find that Mr. Northcross had not established paternity by filing a petition."
The circuit court relied on two grounds to terminate Northcross's parental rights: (1) other factors or issues that arose subsequent to the filing of the original petition, *924 Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) ; and (2) aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(a)(3)(B)(i) . Northcross contends that neither ground is supported by sufficient evidence because both pertain only to a parent, and at the time of the termination hearing, and even in the resulting termination order, Northcross had not been found to be the "parent." Northcross claims that his case is squarely addressed by Earls , supra , and his positive DNA test did not elevate his "putative father" status to that of a "parent." We hold that in all respects, this case aligns with Earls .
"Putative father" means any man not deemed or adjudicated under the laws of the jurisdiction of the United States to be the biological father of a juvenile who claims to be or is alleged to be the biological father of the juvenile. Ark. Code Ann. § 9-27-303(47). "Parent" is defined as a man "who has been found by a court ... to be the biological father of the juvenile." Ark. Code Ann. § 9-27-303(40). DHS contends that "parent" as defined in the statute encompasses a circuit's court "deeming" a man to be the biological parent, even without a specific written finding, citing Earls , 2017 Ark. 171, at 13, 518 S.W.3d at 89 (Wood, J., dissenting). Further, DHS argues that it makes sense to allow a circuit court to deem a man the biological father in DN proceedings because neither DHS nor the juveniles can petition for paternity establishment. See Ark. Code Ann. § 9-10-104 (Repl. 2015).
DHS argues that Earls, supra , does not establish a bright-line rule for determining when a man may be treated as a "parent" but instead demonstrates that absent an explicitly written finding, the reviewing court must engage in a fact-specific inquiry to determine whether a man's status is that of "parent." DHS points to the distinguishing factor that the appellant in Earls had not established a relationship with the juveniles and had not participated meaningfully in the case. See id.
DHS cites Brown v. Arkansas Department of Human Services , 2018 Ark. App. 104, 542 S.W.3d 899, wherein this court found that Brown consented to the circuit court's oral adjudication that he was the legal father when he failed to object to that finding at trial. DHS also cites Johnson v. Arkansas Department of Human Services , 2018 Ark. App. 221, 547 S.W.3d 489, wherein this court held that DHS proved and the circuit court found that Johnson was a "parent," even though no order expressly determined that Johnson was a "parent." The case turned on facts that distinguished Earls , including the circuit court's statement that "[Johnson] was [the] putative father of the child at the time the child was taken into care.... [H]e completed a referred DNA test that showed him to be the biological father of the child." Johnson, 2018 Ark. App. 221, at 13, 547 S.W.3d at 498.
DHS argues that the circuit court deemed Northcross to be the "parent" and that substantial evidence supports that conclusion. DHS emphasizes that the children had been removed from Northcross's physical custody; the DNA results established a 99.99 percent probability of paternity, and Northcross did not object when those results were admitted into evidence; the circuit court afforded Northcross visitation with the children; and the circuit court made Northcross a party to the case and afforded him an attorney. Further, DHS contends that at the trial Northcross did not directly dispute that he is the biological father, and he does not dispute it on appeal.
DHS claims that the circuit court's oral ruling-that Northcross had not established paternity by filing a petition-can be interpreted as a finding that Northcross *925 had not formally established paternity by filing a petition, not as a finding that he is not a "parent." Finally, DHS argues that the termination order refers to Northcross as "father" and "parent" throughout, except for in the style of the case.
The attorney ad litem argues that the evidence of the minors' parentage was fully developed because the DNA test results showing that Northcross is their father was admitted into evidence without objection from Northcross. The ad litem urges this court to affirm with the modification that Northcross is the minors' parent.
The ad litem contends that in this equity matter, this court is not required to reverse when the circuit court does not "dot every 'i' and cross every 't.' " See Ferguson v. Green , 266 Ark. 556, 587 S.W.2d 18 (1979) (a specific-performance case wherein the Arkansas Supreme Court stated that its invariable practice is not to remand a case for further proceedings and proof when it can plainly see what the equities of the parties are, but rather to render such decree as should have been rendered below). The ad litem argues that this case should be affirmed with the modification that Northcross is the biological father.
Despite the arguments to affirm the circuit court's order, we are compelled to follow Earls, supra. There, a positive DNA test was admitted into evidence, but the circuit court never elevated the appellant's status to that of "parent" by making a "finding" that he was the biological father. Earls , 2017 Ark. 171, at 9, 518 S.W.3d at 87. Without a finding, the entry of the DNA test was legally insufficient to make Mr. Earls a "parent." Id. Here, the exact scenario exists. Plus, as a distinction from Brown , supra , and Johnson, supra , DHS specifically requested in its amended TPR petition that the circuit court make a finding regarding paternity or whether Northcross had contacts with the children sufficient for parental rights to attach. The circuit court made no such finding, but the circuit court specifically reopened the record at the close of the hearing to state that Northcross had not petitioned to establish paternity. This court cannot make a finding regarding paternity when the circuit court deliberately did not do so. Relying on Earls , we reverse and remand.
Reversed and remanded.
Glover and Whiteaker, JJ., agree.

Tracy George had her parental rights terminated in the same order as Northcross, but she did not appeal and is not a subject of the case on review.

The circuit court corrected this finding in its no-reunification-services order by stating that the prior DHS involvement and services to the family had resulted in placement of two of the parties' children, who are not subjects of the current case, with relatives.