

# ARKANSAS COURT OF APPEALS

DIVISIONS I, III and IV
No. CR–13–206

| | |
|---|---|
| STEPHEN BRIAN COLE<br><br>APPELLANT<br><br><br>V.<br><br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** April 9, 2014<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. CR–2010–109–IV]<br><br>HONORABLE MARCIA HEARNSBERGER, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Stephen Brian Cole appeals the revocation of his probation in the Garland County Circuit Court, where he was sentenced to 120 months' imprisonment in the Arkansas Department of Correction. On appeal, he argues that the State failed to introduce substantial evidence that he violated a condition of his probation. We affirm.

On March 8, 2010, Cole was charged with domestic battery in the second degree. An order for a mental-health evaluation was entered on March 30, 2010. On August 20, 2010, Dr. Paul Deyoub's forensic- evaluation report was filed with the court. Dr. Deyoub concluded that Cole did not suffer from a mental disease or defect and could assist in his defense.

Cole pled guilty to second-degree domestic battery on November 8, 2010, after admitting to causing serious physical injury to his sixty-four-year-old mother. Pursuant to the plea agreement, he received five years' probation with the condition, among others, that

he receive mental–health treatment. He was examined at the Arkansas State Hospital, and that forensic report was filed on November 30, 2010. The report concluded that Cole did not suffer from a mental disease or defect. Cole then began a course of treatment through Day Springs Behavioral Health Services in Hot Springs. On June 11, 2011, Karen S. Wright of Day Springs wrote to Donnie March of the Garland County Probation Office informing him of Cole's continued treatment at Day Springs. The record shows no other treatment or release by Day Springs.

On August 29, 2011, Cole petitioned for relief from supervision, but the State objected, citing the special conditions of Cole's probation and the violent nature of his offense. After a hearing, the petition was denied by order filed September 23, 2011. On March 2, 2012, Cole again petitioned for relief from supervision, claiming that medication was the cause of his prior bad behavior. The State filed a response objecting for the same reasons it had objected to the first petition.

While the second motion for relief from supervision was pending, the State filed a petition to show cause on May 7, 2012, alleging that Cole's probation should be revoked because he had violated a condition of his probation that required him to obtain prior approval before leaving his residence for an extended period of time. The condition states as follows:

8.    You must keep your current residential address with the Clerk of this Court [2nd Floor, Garland County Courthouse, Room 207, phone number (501) 622-3760] at all times while you are on probation. In addition, you must notify your supervising officer in advance of any change of address, employment, telephone number, or family status. Prior approval from a

 

supervising officer is required for you to change or stay away on an extended basis from your place of residence or to quit your employment.

At the revocation hearing on August 7, 2012, Brent Scrimshire, a probation officer in Garland County, testified that he had supervised Cole's probation. He explained that Cole's supervision was minimum, which required Cole to report to probation every three months. He said that one condition of Cole's probation was to notify probation of any address change. On April 20, 2012, Cole's mother had contacted Scrimshire stating that Cole needed to go to a treatment center in California. Scrimshire told her that it could be done the following week, but not without permission from Scrimshire's supervisor. On April 25, 2012, Cole's mother went to Scrimshire's office and told him that Cole was in California. Mr. Jonathan Gervasi from A Better Tomorrow in Murrieta, California, sent Scrimshire paperwork confirming that Cole was admitted to that facility. Scrimshire did not approve Cole's travel to California or his admission into that facility. He said that after he had verified the information, he filed the violation report, and, at first sighting, Cole was arrested.

Cole's mother, Lois Cole, testified about her son's mental-health treatment following his placement on probation. She said that she made the decision for her son to go to California. She told the facility in California that her son could not get a travel pass, and she was told that they would not be able to hold a place for her son if she did not bring him right away. She stated that she did not realize that they were running the risk of having her son put in jail because the facility in California told her that their legal department would take care of it.

At the close of the evidence, Cole asked that the petition be dismissed because there had not been a showing of a willful violation of the court's rules. The circuit court denied the motion.

Cole testified at a sentencing hearing held September 4, 2012, and he explained his mental-health condition, acknowledged his mistake "with the hospital in California," and sought another chance to adhere to the conditions of his probation. At the disposition hearing on October 30, 2012, the circuit court revoked Cole's probation and sentenced him to ten years' imprisonment. The circuit court filed findings of fact, which stated that

> the Defendant violated Condition Number 8 of his conditions of probation by leaving his approved residence without prior approval of his probation officer. Defendant left the State of Arkansas and traveled to California without permission on or about April 25, 2012, while on probation.

From the sentencing order, Cole filed a timely notice of appeal, and this appeal followed.

In revocation proceedings, the State has the burden of proving that the defendant violated the terms of his probation, as alleged in the revocation petition, by a preponderance of the evidence; this court will not reverse a circuit court's decision to revoke unless it is clearly against the preponderance of the evidence. *Mott v. State*, 2013 Ark. App. 529. When appealing a revocation, it is the appellant's burden to prove that the circuit court's findings were clearly against the preponderance of the evidence. *Id*. The State bears the burden of proof, but need only prove that the defendant committed one violation of the conditions. *Ortiz v. State*, 2013 Ark. App. 442.

Cole contends that the State failed to introduce substantial evidence that he had violated the condition of his probation that required him to notify his supervising officer in

4

advance of any change of address and to get prior approval from a supervising officer to change, or stay away on an extended basis from, his place of residence. He claims that the record is void of any testimony that he permanently changed his address. He contends that his scheduled stay at the California facility was for twenty-eight days. He notes that because he was on minimum supervision, his scheduled appointment with probation would have been June 13, 2012. He argues that he would have been discharged from the California facility on May 20, 2012, had he stayed the scheduled twenty-eight days. Thus, he would have been back to his permanent residence before his scheduled meeting with Scrimshire. He asserts that his move was not permanent.

He contends that the trial court's reasoning "flies in the face" of what he was trying to do—rehabilitate himself by seeking treatment at the California facility. Further, he maintains that there is no requirement in Condition #8 that he notify the probation office that he is leaving his approved residence. He argues that the only time approval from a supervising officer is necessary is for a change of his approved address or for his plans to stay away on an extended basis. Because he was in California only for fifteen days, he maintains that he was not away for an extended time. Finally, he argues that if there was a violation, it was excusable because he was continuing to seek treatment, which was part of the original terms of probation.

The State contends that the revocation is supported by a preponderance of the evidence, citing Scrimshire's and Lois Cole's testimony as set forth above. We agree that the circuit court's decision is not clearly against the preponderance of the evidence. Condition

#8 requires that Cole obtain prior approval to stay away from his place of residence on an extended basis. He failed to do this, and that was a clear violation of his probation.

Affirmed.

PITTMAN, WYNNE, WHITEAKER, WOOD, and BROWN, JJ., agree.

HARRISON, VAUGHT, and HIXSON, JJ., dissent.

**BRANDON J. HARRISON, Judge, dissenting.** I respectfully dissent from the majority's decision to affirm the circuit court's revocation. In doing so, I join Judges Vaught's and Hixson's dissenting opinions but write separately to further explain why I would reverse the circuit court's decision.

First, I wish the majority would have expressly cautioned the bench and bar not to read its opinion as judicially inserting into Arkansas's probationary law that a 14-day trip somewhere (whether inside or outside Arkansas) will necessarily violate the probationary term and condition at issue here. The majority does not do so; therefore, its opinion arguably injects a more specific and particular condition or term into Cole's and other probationers' obligations that did not exist until today.

Second, the majority provides no analytical framework for why it decided this case the way it did. It just says two weeks is too long. On one hand, this case is novel because there is nothing like it in Arkansas's jurisprudence. On the other hand, it presents a rather typical opportunity to interpret a legal text—the typewritten condition 8 is, after all, nothing more than a legal text that must be applied to this case's facts.



Before discussing the legal analysis further, it is important to present some of the revocation-hearing testimony for context. Stephen Cole's mother, Louisa Cole, testified that she decided to send Stephen to California after several places in Arkansas told her that they lacked the ability to care for him as a long-term residential facility. Mrs. Cole testified, "When we got on the plane, I didn't realize we were running the risk of Stephen being put in jail because they [the California facility] told me out there they'd take care of it. They say they handle stuff like that all the time. That their legal department would take care of it and it'd be ok. So I believed them."

Probation Officer Brent Scrimshire testified that Stephen was on minimum supervision, which required him to report every three months. On 20 April 2012, Mrs. Cole told him that Stephen needed to go to a treatment center in California. Scrimshire said that he told Mrs. Cole that "it could be done the following week, but not without permission from my supervisor. She [Mrs. Cole] came to my office on April 25, 2012, and told me that [Stephen] was in California." Officer Scrimshire moved to revoke Stephen's probation the next day, which was three days after Cole had left Arkansas, alleging that Stephen had violated condition 8. Officer Scrimshire also said that he was "inclined to recommend that [Stephen] get the pass" and that Mrs. Cole had told him that the California facility was the only facility that she could find for Stephen and that a bed had been reserved. Scrimshire did not talk to Stephen during that time because "he was not in any way to talk because he was so unstable."

7

We return to the biting legal question: did Cole wilfully and inexcusably "stay away on an extended basis from [his] . . . residence"? As with any legal text involving the civil or criminal law, we must begin with the text's words. *E.g., Stivers v. State*, 354 Ark. 140, 144–45, 118 S.W.3d 558, 561–62 (2003) (criminal); *McMillan v. Live Nation Entm't, Inc.*, 2012 Ark. 166, at 4, 401 S.W.3d 473, 476 (civil). So here again is the condition that the circuit court found that Cole (willfully and inexcusably) violated:

> 8. You must keep your current residential address with the Clerk of this Court at all times while you are on probation. In addition, you must notify your supervising officer in advance of any change of address, employment, telephone number, or family status. Prior approval from a supervising officer is required for you to change or stay away on an extended basis from your place of residence or to quit your employment.

Applying the paragraph's plain terms, the important question is whether Cole "stay[ed] away on an extended basis from [his] place of residence." Because condition 8's words don't answer the question, we must turn to its primary purpose.

Our Supreme Court typically reverts to a legal text's purpose when the plain terms of the dispositive text fails to decide the legal dispute. *See Smith v. ConAgra Foods, Inc.*, 2013 Ark. 502; *Wickham v. State*, 2009 Ark. 357, 324 S.W.3d 344. Condition 8's purpose is to constrain Cole's freedom to move about the world at will and to otherwise make him account to the State. But no evidence suggests that the State lost track of Cole or was placed in the dark about where he was, what he was doing, or how to communicate with him. It is undisputed that Cole told the State (through his mother) about the treatment opportunity in California before he went there and that the treatment facility's lawyer promptly confirmed with the State of Arkansas that Cole was in fact admitted for inpatient treatment. The State

8

may of course limit Cole's freedoms while on probation, but with that power comes the responsibility to reasonably inform him of his legal obligations. Arkansas's probation-revocation law already embodies this basic principle. *E.g.*, *Lambert v. State*, 2013 Ark. App. 64, at 5 (affirming revocation while observing that "the State concedes that a defendant must be given a written statement that expressly communicates the conditions of release"); *see also* *O'Neal v. State*, 2010 Ark. App. 241, at 4 (reversing revocation because sufficient notice of the terms and conditions of probation were lacking).

Though it is well settled that an unclear criminal statute should be construed in favor of a defendant, *Stivers*, *supra*, the case law and treatise material on whether probation conditions should be construed in favor of a defendant is not well developed. A Massachusetts appellate court has, however, noted that, "[a]s in criminal statutes, ambiguities in probation conditions are construed in favor of the defendant." *Com. v. Lally*, 773 N.E.2d 985, 988 (Mass. App. Ct. 2002). *Lally* did not involve the same facts or particular issue as Cole's case; my point is simply that the *Lally* Court treated a probation-condition case as one that presented a legal text in need of interpretation. Perhaps our Supreme Court will soon develop the law on how to treat unclear probation conditions, including whether to adopt the canon of construction that an ambiguous term or condition must be read in favor of the defendant. Given our highly mobile society, probationers, the bench, and the bar would benefit from such a decision.

In the meantime, I am persuaded that in this case the circuit court erred in revoking Cole's probation on the facts presented and in light of condition 8's silence on what

SLIP OPINION

constituted an extended stay away from his residence. I would therefore reverse the circuit court's decision to revoke Stephen Cole's probation.

VAUGHT and HIXSON, JJ., join.

**LARRY D. VAUGHT, Judge, dissenting.** The majority goes to great lengths to explain why appellant's probation was subject to revocation in general. However, that is not the question before us. Our review is limited to the question of whether the preponderance of the evidence supports appellant's revocation based on his failure to comply with the standard "change of address" provision in the terms and conditions of his release. The petition for revocation and the ultimate revocation were based on this ground alone—whether appellant changed his address or stayed away from his address for an extended time. In my view, a fifteen-day stay in a rehabilitation center is not a change of address. Therefore, because I would reverse the trial court, I dissent.

After pleading guilty to second-degree domestic battery for causing serious physical injury to his mother, Cole received a five-year probationary sentence conditioned on him entering "into and fully complet[ing] an in-patient mental health treatment program." He was also subject to the standard probation requirements and was placed on a "minimal supervision" plan, which required that he report only four times per year (every three months). There are two provisions that are of particular relevance to this appeal:

> 8. ADDRESS: You must keep your current residential address with the Clerk of Court [ ] at all times you are on probation. In addition, you must notify your supervising officer in advance of any change of address, employment, telephone number of family state. Prior approval from a supervising officer is required for you to change or stay away on an extended basis from your place of residence or to quit your employment.

10

9. EXTRADITION: You must remain within the State of Arkansas unless granted written permission to leave by a supervising officer. You agree to waive extradition from any jurisdiction in or outside the United States of America and not to contest any effort to return you to the State of Arkansas.

Cole was released into the care of Lois Cole, his mother (and the victim of his crime). According to the trial testimony, on April 20, 2012, Lois contacted Brent Scrimshire (Cole's probation officer) notifying him that the "A Better Tomorrow" mental-health treatment facility had an open bed and she was seeking permission to send her son out-of-state. Scrimshire responded that the approval would need to come from his supervisor and that he could have an answer the following week.

According to Scrimshire, Lois returned on April 25, 2012, to report that Cole had been admitted to the facility. After receiving the appropriate admissions paperwork from the facility, a violation report was filed against Cole with instructions that he be arrested upon his return. The only condition that Cole was alleged to have violated was condition "8. ADDRESS." After hearing the evidence, the trial court admonished Cole:

> You had a chance to be on probation. Probation is one [of] those things that if a person is willing to help themselves, then the Court allows probation. That's not what happened here. The Court is not going to keep giving you an opportunity to rehabilitate yourself when you chose not to do so. Your probation is revoked.

Cole was then sentenced to ten years' imprisonment in the Arkansas Department of Correction.

A fifteen-day stay in a mental-health institution is not a "change of address" or a "change or extended stay" as set out in condition No. 8, which is clearly identified (in bold lettering) as an ADDRESS provision. Although I do not think a twenty-eight day stay would

11

have implicated this provision either, it does not matter. He was only gone for two weeks. If he had been in Bridgeway in Little Rock (which is also a "residential" facility), on vacation, or visiting a relative, there would be no expectation that he submit a change of his address because his address would not have changed.

Second, seeking the treatment was also a condition of his release. And, for the trial court to find that it was "not going to keep giving [Cole] an opportunity to rehabilitate [himself] when [he] chose not to do so" as the basis for the revocation is against the preponderance of the evidence. In fact, trying to rehabilitate himself was precisely what he was doing that gave rise to the alleged violation.

Third, had Cole's probation been revoked based on provision No. 9, which requires that he receive approval before leaving the State of Arkansas, this case would be much more difficult. But, no such violation was alleged and cannot be a basis to support the revocation. Therefore dissent, and would reverse the ten-year sentence Cole received based on the fact that the trial court's finding that he violated condition No. 8 of his release was against the preponderance of the evidence.

HARRISON and HIXSON, JJ., join.

**KENNETH S. HIXSON, Judge, dissenting.** As pointed out in Judge Vaught's dissenting opinion, the majority goes to great lengths to include what I believe are irrelevant minutia concerning the defendant to justify affirming the revocation. The issue in this appeal should not include a debate on the unhappy and disappointing background of the defendant or whether his mother was overly protective; rather, this appeal should be focused on whether

the defendant inexcusably violated a term of his probation. Assuming everything the majority writes is true, the imposition of a ten-year prison sentence because the defendant failed to obtain a written permission slip prior to receiving bona fide medical treatment out-of-state is a gross injustice, and in my view unacceptable.

The testimony of the probation officer was unequivocal that, when the defendant went to California at his mother's prompting to attend an in-house rehabilitation center, the defendant was fully compliant with all the terms of his probation. Because the defendant attended the two-week in-house rehabilitation center in California before obtaining permission, the trial court believed he had a "change of residence." Based on this "change of residence," the trial court determined that he had violated his probation, and it changed a five-year probation sentence to a ten-year term of imprisonment. At worst, the trial court and our court should have determined that, even assuming there had been a violation, it was excusable. Accordingly, I am left with a firm conclusion that a mistake has been made. Because the trial court's finding that appellant inexcusably violated his probation was clearly against the preponderance of the evidence.

HARRISON and VAUGHT, JJ., join.

*Gary J. Barrett*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.