BRANDON J. HARRISON, Judge, dissenting. I respectfully dissent from the majority’s decision to affirm the circuit court’s revocation. In doing so, I join Judges Vaught’s and Hixson’s dissenting opinions but write separately to further explain why I would reverse the circuit court’s decision. First, I wish the majority would have expressly cautioned the bench and bar not to read its opinion as judicially inserting into Arkansas’s probationary law that a 14-day trip somewhere (whether inside or outside Arkansas) will necessarily violate the probationary term and condition at issue here. The majority does not do so; therefore, its opinion arguably injects a more specific and particular condition or term into Cole’s and other probationers’ obligations that did not exist until today. Second, the majority provides no analytical framework for why it decided this case the way it did. It just says two weeks is too long. On one hand, this case is novel because there is nothing like it in Arkansas’s jurisprudence. On the other hand, it presents a rather typical opportunity to interpret a legal text — the typewritten condition 8 is, after all, nothing more than a legal text that must be applied to this case’s facts. |7Before discussing the legal analysis further, it is important to present some of the revocation-hearing testimony for context. Stephen Cole’s mother, Louisa Cole, testified that she decided to send Stephen to California after several places in Arkansas told her that they lacked the ability to care for him as a long-term residential facility. Mrs. Cole testified, ‘When we got on the plane, I didn’t realize we were running the risk of Stephen being put in jail because they [the California facility] told me out there they’d take care of it. They say they handle stuff like that all the time. That their legal department would take care of it and it’d be ok. So I believed them.” Probation Officer Brent Scrimshire testified that Stephen was on minimum supervision, which required him to report every three months. On 20 April 2012, Mrs. Cole told him that Stephen needed to go to a treatment center in California. Scrimshire said that he told Mrs. Cole that “it could be done the following week, but not without permission from my supervisor. She [Mrs. Cole] came to my office on April 25, 2012, and told me that [Stephen] was in California.” Officer Scrimshire moved to revoke Stephen’s probation the next day, which was three days after Cole had left Arkansas, alleging that Stephen had violated condition 8. Officer Scrimshire also said that he was “inclined to recommend that [Stephen] get the pass” and that Mrs. Cole had told him that the California facility was the only facility that she could find for Stephen and that a bed had been reserved. Scrimshire did not talk to Stephen during that time because “he was not in any way to talk because he was so unstable.” |sWe return to the biting legal question: did Cole wilfully and inexcusably “stay away on an extended basis from [his] ... residence”? As with any legal text involving the civil or criminal law, we must begin with the text’s words. E.g., Stivers v. State, 354 Ark. 140, 144r45, 118 S.W.3d 558, 561-62 (2003) (criminal); McMillan v. Live Nation Entm’t, Inc., 2012 Ark. 166, at 4, 401 S.W.3d 473, 476 (civil). So here again is the condition that the circuit court found that Cole (willfully and inexcusably) violated: 8. You must keep your current residential address with the Clerk of this Court at all times while you are on probation. In addition, you must notify your supervising officer in advance of any change of address, employment, telephone number, or family status. Prior approval from a supervising officer is required for you to change or stay away on an extended basis from your place of residence or to quit your employment. Applying the paragraph’s plain terms, the important question is whether Cole “stay[ed] away on an extended basis from [his] place of residence.” Because condition 8’s words don’t answer the question, we must turn to its primary purpose. Our Supreme Court typically reverts to - a legal text’s purpose when the plain terms of the dispositive text fails to decide the legal dispute. See Smith v. ConAgra Foods, Inc., 2013 Ark. 502, 2013 WL 6328851; Wickham v. State, 2009 Ark. 357, 324 S.W.3d 344. Condition 8’s purpose is to constrain Cole’s freedom to move about the world at will and to otherwise make him account to the State. But no evidence suggests that the State lost track of Cole or was placed in the dark about where he was, what he was doing, or how to communicate with him. It is undisputed that Cole told the State (through his mother) about the treatment opportunity in California before he went there and that the treatment facility’s lawyer promptly confirmed with the State of Arkansas that Cole was in fact admitted for inpatient treatment. The State | nmay of course limit Cole’s freedoms while on probation, but with that power comes the responsibility to reasonably inform him of his legal obligations. Arkansas’s probation-revocation law already embodies this basic principle. E.g., Lambert v. State, 2013 Ark. App. 64, at 5, 426 S.W.3d 478, 481 (affirming revocation while observing that “the State concedes that a defendant must be given a written statement that expressly communicates the conditions of release”); see also O’Neal v. State, 2010 Ark. App. 241, at 4, 2010 WL 816340 (reversing revocation because sufficient notice of the terms and conditions of probation were lacking). Though it is well settled that an unclear criminal statute should be construed in favor of a defendant, Stivers, supra, the case law and treatise material on whether probation conditions should be construed in favor of a defendant is not well developed. A Massachusetts appellate court has, however, noted that, “[a]s in criminal statutes, ambiguities in probation conditions are construed in favor of the defendant.” Com. v. Lally, 55 Mass.App.Ct. 601, 773 N.E.2d 985, 988 (2002). Lally did not involve the same facts or particular issue as Cole’s case; my point is simply that the Lally Court treated a probation-condition case as one that presented a legal text in need of interpretation. Perhaps our Supreme Court will soon develop the law on how to treat unclear probation conditions, including whether to adopt the canon of construction that an ambiguous term or condition must be read in favor of the defendant. Given our highly mobile society, probationers, the bench, and the bar would benefit from such a decision. In the meantime, I am persuaded that in this case the circuit court erred in revoking Cole’s probation on the facts presented and in light of condition 8’s silence on what | ^constituted an extended stay away from his residence. I would therefore reverse the circuit court’s decision to revoke Stephen Cole’s probation. VAUGHT and HIXSON, JJ„ join.